947 So.2d 15 (2007)
Tonya A. COLVIN
v.
LOUISIANA PATIENT'S COMPENSATION FUND OVERSIGHT BOARD, et al.
Thomas Miller, et al.
v.
Louisiana Patient's Compensation Fund oversight Board, et al.
No. 2006-C-1104.
Supreme Court of Louisiana.
January 17, 2007.
*16 Charles C. Foti, Jr., Attorney General, Jerald L. Perlman, Assistant Attorney General, Roedel, Parson, Koch, Blache, Balhoff & McCollister, Larry M. Roedel, Carlton Jones, III, Baton Rouge, for Applicant.
Nelson & Hammons, John L. Hammons, Cornell R. Flournoy, Shreveport, for Respondent.
VICTORY, J.
We granted the writ application in these consolidated cases to determine the proper venue in a suit against the Louisiana Patient's Compensation Fund Oversight Board (the "PCFOB"). After considering the record and the applicable law, we hold that venue for a suit against this state agency is specifically provided by La. R.S. 13:5104(A), and that the general venue provisions and exceptions found in La. C.C.P. arts. 42, and 71-85, specifically La. C.C.P. art. 74, do not apply. Because we find that these causes of action arose in East Baton Rouge Parish for venue purposes, we reverse the judgment of the court of appeal, and reinstate the judgment of the trial court which transferred *17 the cases to the 19th Judicial District Court.

FACTS AND PROCEDURAL HISTORY
Plaintiffs in these consolidated cases, the Colvins and the Millers, each reside in Bossier Parish. The Colvins filed a medical malpractice claim in Caddo Parish against a doctor and hospital located in Caddo Parish as well as the Louisiana Patient's Compensation Fund (the "PCF") for medical malpractice that occurred in Caddo Parish. Trial was set for October 24, 2005, but the case was settled before trial, and the PCF paid the plaintiffs on November 30, 2005. The Millers filed a medical malpractice claim in Bossier Parish against a Bossier hospital, a Caddo Parish hospital, a doctor, and the PCF for medical malpractice that occurred in Bossier and Caddo Parishes. The medical review panel found that the negligence of the nursing staff at the Caddo Parish hospital caused the death of the Miller's daughter and granddaughter. The Millers settled with the Caddo Parish hospital, and their claims against the Bossier hospital and the doctor were dismissed on summary judgment. The Millers subsequently obtained a judgment in their favor against the PCF and the nominal defendant hospital for all damages sought. The PCF's appeal of that judgment is pending at the Second Circuit Court of Appeal. Those cases are not the subject of this opinion.
Subsequently, both the Colvins and the Millers filed suit against the Louisiana Patient's Compensation Fund Oversight Board (the "PCFOB") seeking compensation for damages based on the PCFOB's alleged failure to carry out its statutorily mandated duties of good faith and its fiduciary obligations to the legitimate victims of medical malpractice and for a declaratory judgment specifying and setting forth the duties and obligations owed by the PCF, the PCFOB and representatives of these bodies to plaintiffs and other similarly situated medical malpractice claimants. Essentially, plaintiffs argue that the PCFOB arbitrarily and capriciously failed to settle and pay their claims as required under the medical malpractice statute. Plaintiffs claim that these actions are separate and distinct from their underlying medical malpractice claims filed pursuant to the medical malpractice act. Both the Colvins and the Millers filed these suits in Caddo Parish. The PCFOB filed exceptions of improper venue in both cases, and both cases were dismissed. Subsequently, the Colvins and the Millers each filed suit in Bossier Parish, and on motion of the PCFOB, the cases were consolidated. The PCFOB then filed exceptions of improper venue in Bossier Parish, which were granted, and the cases were transferred to the 19th Judicial District Court in East Baton Rouge Parish. The court of appeal reversed, and remanded the cases to Bossier Parish for further proceedings. Colvin v. Louisiana Patients Compensation Oversight Board, c/w Miller v. Louisiana Patients Compensation Oversight Board, 40, 903, 40,904 (La. App. 2 Cir. 4/12/06), 927 So.2d 1229. We granted this writ application to determine the proper venue for this suit against a state agency. Colvin v. Louisiana Patients Compensation Oversight Board, c/w Miller v. Louisiana Patients Compensation Oversight Board, 06-1104 (La.9/1/06), 937 So.2d 847.

DISCUSSION
We explained venue in Underwood v. Lane Memorial Hosp. as follows:
Venue means the parish where an action may properly be brought and tried under the rules regulating the subject. La.Code Civ. Proc. art. 41. Venue provisions are significantly different from *18 jurisdictional provisions. Code articles governing jurisdiction over the person, for instance, are based largely on constitutional requirements of due process and of full faith and credit. On the other hand, Code articles governing venue are based on legislative considerations for allocating cases, according to the particular action and the particular parties, among the various parishes which have an interest in the action (over which some Louisiana court has the constitutional power to exercise jurisdiction).
The original concept of venue was that "one must be sued before his own judge." Former La.Code Practice art. 162. This concept, however, has become anachronistic with the ever-increasing number of legislative exceptions to venue at the party's domicile. Kellis v. Farber, 523 So.2d 843, 847 (La.1988).
The 1960 Code of Civil Procedure divided the rules of venue into three categories: (1) Article 44 provides a non-waivable mandatory venue for actions such as nullity of judgment; (2) Articles 78 through 83 provide a preferred but waivable venue which governs exclusively when the rule conflicts with any article except Article 44; and (3) Article 42 provides a general venue in which the defendant must be sued at his "home base," but is subject to numerous exceptions in Articles 71 through 77, which provide specific optional venues that the plaintiff may choose as an alternative to the venue in Article 42. Thus the rules of venue today are less designed to provide protection for the defendant, who has no constitutional right to be tried in a particular forum, and more designed to allocate cases among parishes with an interest in the proceeding so as to provide for efficient disposition of caseloads.
97-1997 (La.7/8/98), 714 So.2d 715, 716-17.
In Underwood, a suit against a political subdivision, we further explained that "Article 42, which essentially provides for venue at the `home base' of the entity sued, has no provision for venue in actions against the state or political subdivisions of the state," and that instead the venue provisions against these entities are set forth in La. R.S. 13:5104. Id. at 717 (emphasis added). La. R.S. 13:5104 provides in pertinent part:
A. All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises.
B. All suits filed against a political subdivision of the state or against an officer or employee of a political subdivision for conduct arising out of the discharge of his official duties or within the course and scope of his employment shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises. (Emphasis added.)
As we noted in Underwood, a 1985 amendment to 13:5104(B) which changed "may" to "shall" indicated a legislative intent that a single political subdivision can be sued only in one of the two specified parishes and that no other exceptions are applicable. Underwood, supra at 717-18. However, as legal commentators have pointed out, La. R.S. 13:5104(A), dealing with the state agencies, uses the permissive "may," which "arguably can be construed as a rule of general venue subject to the exceptions of Articles 71 through 77, but `may' also could be construed to mean venue is permissible in one of the two parishes but no other." Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise, *19 Vol. 1, Civil Procedure, § 3.4, p. 37 (West 1999).
This is the issue with which we are confronted today, for the exception for tort actions found in La. C.C.P. 74, if applicable, is broader than La. R.S. 13:5104(A)in that it allows for venue in the parish in which the damages were sustained. In addition, if we determine that La. R.S. 13:5104(A) is applicable to the exclusion of the other general venue statutes, then we must also determine where a direct tort cause of action arises for purposes of La. R.S. 13:5104.[1]
Courts have uniformly recognized that because La. R.S. 13:5104(B) uses the term "shall" in providing venue for suits against political subdivisions, this provision is mandatory and no other venue provisions or exceptions are applicable. See e.g., White v. Beauregard Memorial Hosp., 02-0902 (La.6/14/02), 821 So.2d 481; Underwood, supra at 717-18; Franques v. Evangeline Parish Police Jury, 625 So.2d 157 (La. 1993); National Linen Service v. City of Monroe, 39,199 (La.App. 2 Cir. 12/15/04), 889 So.2d 1186; Hatten v. Schwerman Trucking Co., 04-1005 (La. App. 3 Cir. 12/8/04), 889 So.2d 448, writ denied, 05-0076 (La.3/18/05), 896 So.2d 1009; Singley v. City of Bastrop, 33,247 (La.App. 2 Cir. 5/10/00), 759 So.2d 292. As such, the general venue provisions found in La. C.C.P. arts. 42, and 71-85 do not apply. However, as we must clearly recognize, La. R.S. 13:5104(A) provides that suits against the state or a state agency "may" be instituted in Baton Rouge or the parish in which the cause of action arises.
In determining the meaning of La. R.S. 13:5104(A), we look to the applicable rules of statutory construction, which were recently set out by this Court as follows:
The fundamental question in all cases of statutory interpretation is legislative intent. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX, p. 11 (La.6/29/01), 808 So.2d 294, 302; Succession of Boyter, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Id.; Stogner v. Stogner, 98-3044, p. 5 (La.7/7/99), 739 So.2d 762, 766.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. SWAT 24 Shreveport Bossier, XXXX-XXXX at p. 11, 808 So.2d at 302; Succession of Boyter, 99-0761 at p. 9, 756 So.2d at 1129. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature. Id.

Further, it is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. Sultana Corporation v. Jewelers Mutual Insurance Company, 03-0360, p. 9 (La.12/3/03), 860 So.2d 1112, 1119. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as *20 meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. St. Martin Parish Police Jury v. Iberville Parish Police Jury, 212 La. 886, 33 So.2d 671, 676 (1947); State v. Fontenot, 112 La. 628, 36 So. 630, 634 (1904). Finally, it is presumed that the legislature acts with full knowledge of well-[settled] principles of statutory construction. Sultana Corporation, 03-0360 at p. 9, 860 So.2d at 1119.
In addition to the above judicial principles which are guides to determine the intent of the legislature, the legislature has enacted rules for the construction of statutes in the provisions of the revised statutes. The following are pertinent to this case.
Louisiana Revised Statutes 1:3 provides:
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
The word "shall" is mandatory and the word "may" is permissive.
Moss v. State, 05-1963 (La.4/4/06), 925 So.2d 1185.
The issue before us is whether, by using the phrase "may," the legislature intended the general venue provisions and exceptions found in La. C.C.P. arts. 42 and 71-85 to apply, or whether the legislature intended that suit "may" be filed in Baton Rouge or the parish where the cause of action arose but no other, or whether the legislature used the term "may" in recognition of the fact that there are any other venue statutes applicable to state agencies that may also apply.[2]
As this Court has recognized, "[i]n the context of venue, the permissive `may' and the mandatory `shall' have often been interchanged." Underwood, supra at 717. "Indeed, Article 42, the general venue statute, employs the word "shall" to define the general venue for different types of defendants, yet is subject to the numerous statutory exceptions." Id. (citing Gurtler, Hebert & Co. v. Marquette Casualty, Co., 145 So.2d 145 (La.App. 4 Cir.1962)) (holding that "may" in venue provision involving enforcing private works is mandatory); and see also 3 A Norman J. Singer, Sutherland Statutory Construction § 67.04 (5th ed.1992) (noting that venue provisions should be liberally construed). Thus, in spite of the rule in La. R.S. 1:4 that "may" is permissive, that is clearly not always the case when it comes to venue statutes, which makes sense when we recognize that venue is basically a convenience factor as opposed to a jurisdictional factor, giving consideration to the particular action and the particular parties. Indeed, when multiple parties are involved, venue may be "mandatory" in a different court for each defendant, yet that does not mean that the case will not be ultimately heard in a court that is proper for one party but not the others under the concept of ancillary *21 venue. See e.g., Underwood, supra.[3]
In addition, as the above rules indicate, a statute should not be interpreted in a manner which would make it meaningless if a construction giving force to all words can legitimately be found. In this case, if we were to interpret La. R.S. 13:5104(A) as a permissive statute such that all other general venue statutes and exceptions were also applicable, the entire statute would be meaningless. This is evident when considering La. C.C.P.art. 42 and 74, which the plaintiffs claim are applicable in this case. La. R.S. 13:5104(A) provides for venue at the defendant's "home base" of East Baton Rouge Parish, with an alternate venue "where the cause of action arises." If the general venue statutes were also applicable to a state agency, then La. R.S. 13:5104(A) would be meaningless, as La. C.C.P. art. 42 would provide for venue at defendant's "home base," which in this case is East Baton Rouge Parish, and La. C.C.P. art. 74 would allow venue in the parish where the wrongful conduct occurred or where the damages were sustained. There would have been no reason to enact La. R.S. 13:5104(A) for state agencies if the general venue statutes were also applicable because the general venue statutes already provided for venue in those same places in addition to other places.
Further, it is evident that the general venue statutes do not apply to the state or state agencies as La. C.C.P. art. 42 lists the specific entities to which these general venue statutes apply, none of which is the state, state agencies, or political subdivisions. The rules found in La. C.C.P. art. 42 set out the rules for (1) individuals; (2) domestic corporations, domestic insurers and domestic limited liability companies; (3) domestic partnerships and domestic unincorporated associations; (4) foreign corporations and foreign limited liability companies licensed to do business in Louisiana; (5) foreign corporations or foreign limited liability companies not licensed to do business in Louisiana, nonresidents who have not appointed an agent for service of process, other than a foreign or alien insurer; (6) nonresidents, other than foreign corporations or alien insurers, who have appointed an agent for service of process; and (7) foreign or alien insurers. Clearly, the state and state agencies do not fit into any of these categories and thus the general venue provisions of La. C.C.P. art. 42 do not apply to them. As the general venue provisions of La. C.C.P. art. 42 do not apply, neither do the exceptions to Article 42, including La. C.C.P. art. 74, apply. La. C.C.P. art. 43 ("The general rules of venue provided in Article 42 are subject to the exceptions provided in Articles 71 through 85 and as otherwise provided by law.")
One explanation why the legislature may have used the term "may" in La. R.S. 135104(A) when providing venue for the state and state agencies, but used "shall" in La. R.S. 13:5104(B) when providing venue for political subdivisions, is that there are specific statutes that provide venue for specific state agencies which would take precedence over La. R.S. 13:5104(A). For instance, La. R.S. 13:5104(D) provides that *22 suits against faculty or staff of the LSU Board of Supervisors, the Louisiana State Medical School, or the Louisiana State Health Services Center alleging administrative or supervisory negligence arising out of the discharge of duties created pursuant to La. R.S. 17:1509-1519.8 shall be brought in the parish where the medical care was actually provided to the patient. Regarding state agencies outside the health related fields, La. R.S. 56:7(A) establishes that the only proper venue for suits against the Louisiana Wildlife and Fisheries Commission is East Baton Rouge Parish. Likewise, La. 36:602(A) creates the Department of Wildlife and Fisheries and establishes its domicile as Baton Rouge. These specific statutes controlling suits against the Commission and the Department supersede the general venue statute of La. R.S. 13:5104(A) for suits against these agencies. Jurisich v. Seafood Div. of Louisiana Dept. of Wildlife and Fisheries, 95-2049 (La.App. 4 Cir. 5/15/96), 676 So.2d 600, 602 (citing State Dept. of Wildlife & Fisheries v. Vanacor, 94-689 (La.App. 5 Cir. 12/28/94), 648 So.2d 1078); Demolle v. Louisiana Dept. of Wildlife & Fisheries, 580 So.2d 1083 (La. App. 4 Cir.), writ denied, 586 So.2d 534 (La.1991). In addition, La. R.S. 15:1177 provides that any offender aggrieved by an adverse decision of the Department of Public Safety and Corrections may seek judicial review only in the 19th Judicial District, or if the offender is in the physical custody of the sheriff, in the district court having jurisdiction in the parish in which the sheriff is located. See also La. R.S. 49:964(B) (providing venue for review of Office of Risk Management decisions in parish where agency is located); La. C.C.P. art. 84 (providing venue for numerous state retirement systems and employee benefit programs in Baton Rouge or the parish of domicile of the retirement system or employee benefit program).[4]
Considering the above, we find that suits against the state or state agencies are not governed by the general venue provisions and exceptions found in Louisiana Code of Civil Procedure Articles 42 and 71 through 85. Instead, the general venue provisions for the state or state agencies are found at La. R.S. 13:5104(A), and this general venue provision governs, unless a more specific venue governing a specific state agency is found elsewhere in the Revised Statutes. That being said, we must now determine where venue is proper for these consolidated suits against the PCFOB under La. R.S. 13:5104(A).
Plaintiffs claim that the PCFOB is obliged under the Louisiana Medical Malpractice Act to expeditiously investigate and evaluate medical malpractice claimants justly, equitably and promptly for all losses, injuries or other damages to which they are entitled. Plaintiffs claim that, by failing to properly handle their claims against the PCF, the PCFOB breached obligations of good faith and fair dealing and fiduciary duties owed to them as medical malpractice claimants. Plaintiffs filed these tort actions seeking damages for such violations and seeking a declaratory judgment enumerating and delineating their rights pursuant to the Louisiana Medical Malpractice Act as well as enumerating the duties and obligations owed to them and other similarly situated medical malpractice claimants by the PCFOB and those for *23 whom the PCFOB may be legally responsible.
Accordingly, both suits seek declaratory and monetary relief against the PCFOB for negligent adjustment and administration of the underlying medical malpractice claims. The trial court found that as the plaintiffs are challenging a ministerial action of a state agency which handles a large number of claims, and the conduct complained of occurred in Baton Rouge where the decisions are made, the court in the parish where the decisions are made should review all complaints against that agency rather than have courts all over the state review the actions. The court of appeal reversed, finding that venue is proper under La. R.S. 13:5104(A) in Bossier Parish where the plaintiffs are domiciled and where the damages resulting from the action and/or inaction arose. 927 So.2d at 1231. The court of appeal relied on Landry v. Avondale Industries, Inc., 03-0719 (La.12/3/03), 864 So.2d 117 and Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262, which hold that a cause of action accrues when a party has a right to sue and that a negligence cause of action will arise only upon the happening of a wrongful act and the existence of an injury resulting in legally cognizable damages. Id. Because plaintiffs allege they have suffered economic damages as well as general damages arising from the alleged intentional infliction of emotional distress on the part of the PCFOB in failing to properly administer their claims and these damages were sustained by plaintiffs in Bossier Parish where they reside, the court of appeal held that venue was proper in Bossier Parish under La. R.S. 13:5104(A). Id.
We disagree. In a direct tort action, the analysis for "when" a cause of action arises is different from the analysis for "where" a cause of action arises for venue purposes. Although we ultimately held in Wharton that for venue purposes under La. R.S. 13:5104(B), a wrongful death cause of action arises at the place of death, regardless of where the wrongful conduct occurred[5], we recognized that in a direct tort action, as opposed to a wrongful death action, venue is proper, even under La. C.C.P. art. 74, in the parish in which the wrongful conduct took place.[6] Further, the standard for addressing "when" a cause of action arises under Landry and Walls addresses theories of recovery for determining *24 a party's right to recovery, whereas "where" a cause of action arises for venue purposes addresses a consideration of the most convenient situs for trial. Under such consideration, the place where a plaintiff happened to be when wrongful conduct caused his damages is often very inconvenient for purposes of where the trial should be conducted, as it often has no relation to the location of the defendant, or the wrongful conduct. In any event, the ultimate holding of Wharton is distinguishable and not determinative of this case, as Wharton was a wrongful death case.
Courts of appeal have recognized that the question of what constitutes the situs of a cause of action has been the source of much consternation among the circuits and has eluded a precise definition. Anderson v. State, 05-0551 (La.App. 3 Cir. 11/2/05), 916 So.2d 431, 435, writ denied, 05-2493 (La.6/2/06), 929 So.2d 1243; Commercial Nat. Bank in Shreveport v. First Nat. Bank of Fairfield, Tex., 603 So.2d 270 (La.App. 2 Cir.), writ denied, 605 So.2d 1151 (La.1992); V.C. Nora, supra; Abshire v. State, through Dept. of Ins., 93-923 (La. App. 3 Cir. 4/6/94), 636 So.2d 627, writ denied, 94-1213 (La.6/24/94), 640 So.2d 1332. After reviewing the applicable law and the purpose of the venue statutes, we agree with and adopt the test first set forth by the Fourth Circuit in Avenal v. State, Dept. of Natural Resources, 95-0836 (La.App. 4 Cir. 11/30/95), 668 So.2d 1150, writ denied, 96-198 (La.1/26/96), 667 So.2d 524. In Avenal, the court held that "the place where the operative facts occurred which support plaintiff's entitlement to recovery is where the cause of action aris[es]" for venue purposes under La. R.S. 13:5104(A).
In this case, the operative facts which support plaintiffs' entitlement to recovery, i.e., the PCFOB's administrative decision not to settle their claims, all occurred in East Baton Rouge Parish. Indeed, several courts have held that where a state agency's ministerial or administrative actions are called into question, East Baton Rouge offers the only appropriate forum, as that is both "the district in which the state capital is located" and "the district court having jurisdiction in the parish in which the cause of action arises." Anderson v. State, supra; Cameron Parish Police Jury v. McKeithen, 02-1202 (La.App. 3 Cir. 10/14/02), 827 So.2d 666, writ denied, 02-2547, 02-2548 (La.10/23/02), 827 So.2d 1148, 1149; Abshire v. State, supra. In Abshire, plaintiffs filed suit against the Department of Insurance and others for fraud and mismanagement in Rapides Parish, alleging that venue was proper there as their place of domicile and where their damages were suffered. The Abshire court, after finding that La. R.S. 13:5104 was the sole statutory authority for venue against state agencies, held that when a public defendant's ministerial actions are called into question, Baton Rouge offers the only appropriate forum. 636 So.2d at 629. The court reasoned:
"[s]ome entities frequently may be sued in parishes other than that of the domicile of their headquarters, but the language contained in La. R.S. 13:5104(A) would render exceptionally rare the circumstances under which a state entity who opposes litigation away from home might be required to litigate issues of great import statewide, as opposed to causes of action whose immediate consequences merely reverberate locally." See e.g., Ferrington v. Van Sickle, 545 So.2d 719 (La.App. 2d Cir.1989); Wall v. American Emp. Ins. Co., 250 So.2d 172 (La.App. 1 Cir.1971). See also DeVillier v. State, 590 So.2d 1184 (La.1991) (Parties challenging constitutionality of statute and seeking to enjoin its enforcement *25 in St. Martin Parish required to be brought in East Baton Rouge Parish). "Causes of action" arising from ministerial actions or inactions seldom arise anywhere but in the district court in which the state capitol is located. Demolle v. Dept. of Wildlife & Fisheries, [supra].
Practical considerations recommend this result as well. A contrary conclusion could exact from nonlitigant taxpayers too high a price: a disabled state government entrusted and obligated to protect all of its citizenry hobbled by the special (possibly even deserving) interests of a relative few. Certainly, such an effect could not have been contemplated by the redactors of our Code of Civil Procedure.
Plaintiffs in this proceeding argue that senior officials in state government failed to regulate the insurance and financial industries on a statewide basis. In light of our determination that the alleged causes of action arose in our state's capital, we conclude that Rapides Parish is an inappropriate venue for the allegations pertaining to the state's aberrant ministrations. A contrary conclusion could result in undue encumbrances upon the state's governing apparatus at its very highest reaches, an absurd consequence we are certain could not have been intended by the redactors of our code of civil procedure. See generally Turner v. Collector of Revenue, 209 So.2d 301 (La.App. 4 Cir.1968), holding that branch offices opened by state tax collector did not have the effect of broadening venue options (which we apply by analogy to the effect of infrequent state inspections designed to alleviate the need for bringing all records to the state capital for inspection).
Abshire, supra at 630.
In Anderson, plaintiffs filed suit in Calcasieu Parish against the Governor and the Legislature for failing to properly fund the indigent defender system in Calcasieu Parish, arguing that venue was proper under La. R.S. 13:5104(A) as Calcasieu Parish was the place where the operative facts arose. Anderson, supra. The court adopted the reasoning found in Abshire and held that because the plaintiffs were challenging the administration and funding of the Louisiana indigent defender system in general, although the class they sought to certify involved Calcasieu Parish only, the issue was of great statewide import, and therefore venue was only proper under La. R.S. 13:5104(A) in East Baton Rouge Parish. Likewise, the Third Circuit has also held that a mandamus action seeking to force the Secretary of State to perform its ministerial duties under the Election Code by placing something on the ballot in Cameron Parish must be brought in East Baton Rouge Parish under La. R.S. 13:5104. Cameron Parish Police Jury v. McKeithen, supra.
That is not to say that all actions against the state or state agencies must be filed in East Baton Rouge Parish under La. R.S. 13:5104(A). There are instances where the cause of action will arise in another parish because that is where the operative facts occurred which support plaintiff's entitlement to recovery. In Avenal, supra, oyster fishermen owning leases in St. Bernard and Plaquemines Parishes filed suit in Plaquemines Parish against the Department of Natural Resources alleging that their leases were destroyed because of the intrusion of freshwater from the Mississippi River via the Caernarvon Freshwater Diversion Project, which was authorized, constructed, funded and operated by the State. The court of appeal rejected the Department's argument that the cause of action arose in Baton Rouge for venue purposes because *26 that was where the Department made the decision to construct the Caernarvon Project. 668 So.2d at 1152. Instead, the court of appeal found that venue was proper in Plaquemines Parish because the plaintiffs were not contesting the decision of the Department to construct the Caernarvon Project, but were simply alleging that the freshwater flowing through the project has damaged or destroyed their property, and that the control structure which permits the flow of water is owned and operated by the State, through the Department. Therefore, the court found that was where the operative facts occurred which support the plaintiff's entitlement to recovery, and therefore, that was where the cause of action arose for venue purposes under La. R.S. 13:5104(A). Id.; see also Ehlinger & Associates v. State ex rel. Div. of Admin., Dept. of Facility Planning and Control, 01-52 (La.App. 5 Cir. 5/30/01), 788 So.2d 644 (in suit against construction company and state agency, the court appeal found that venue was proper at the site of the construction site under La. R.S. 13:5104(A) because that is where the operative facts occurred which supported plaintiffs' cause of action, regardless of allegation that the state agency's decision not to pay for the work was made in Baton Rouge); cf., Robbins v. State Through State Land Office, 97-671 (La.App. 3 Cir. 12/17/97), 704 So.2d 961, writ denied, 98-176 (La.3/20/98), 715 So.2d 1214 (affirming its decision in Abshire that La. R.S. 13:5104(A) "would render exceptionally rare the circumstances under which a state entity who opposes litigation away from home might be required to litigate issues of great import statewide, as opposed to causes of action whose immediate consequences merely reverberate locally," but holding that lessee's action against state levee board (lessor) had repercussions which merely reverberate locally in Concordia Parish where leased property was located; therefore, court applied venue provision of La. C.C.P. art. 80 dealing with immovable property to find venue proper in Concordia Parish).
Courts have also found venue under La. R.S. 13:5104(A) to be proper outside of East Baton Rouge Parish in suits against the PCFOB for future medical benefits. In Louisiana Patient's Compensation Fund Oversight Bd. v. Edwards, the court of appeal found that in such a suit, the cause of action arises for venue purposes under La. R.S. 13:5104(A) in the parish where the medical malpractice victim resides and where he has need for future medical care and related benefits. 39,149 (La.App. 2 Cir. 12/15/04), 891 So.2d 85, 90. The court also noted that La. R.S. 40:1299.43(E)(1) grants continuing jurisdiction to the district court which rendered the final judgment in cases where future medical care and related benefits are needed by the patient. Id.; see also Louviere v. State, Louisiana Dept. of Educ., 04-1897 (La.App. 1 Cir. 9/23/05), 923 So.2d 146, writ denied, 05-2258 (La.4/24/06), 926 So.2d 538.

CONCLUSION
The Code articles governing venue are based on legislative considerations for allocating cases, according to the particular action and the particular parties, among the various parishes which have an interest in the action. Although the legislature has enacted general venue statutes to provide general rules and exceptions for a variety of cases, the rules found in La. C.C.P. arts 42, and 71-85 generally do not apply to state agencies. The general venue rule for state agencies is found in La. R.S. 13:5104(A), although more specific venue provisions for certain specific state agencies can be found elsewhere.
In this case, venue for these consolidated suits against the PCFOB is proper *27 under La. R.S. 13:5104(A) in either the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises. For venue purposes, in determining the parish in which the cause of action arises, we look to the parish where the operative facts occurred which support plaintiff's entitlement to recovery. Because these consolidated cases seek recovery based on administrative decisions of the PCFOB not to settle medical malpractice claims in a matter satisfactory to plaintiffs, which decisions, and failure to satisfactorily pay, were made in East Baton Rough Parish, we find that the operative facts which support plaintiff's entitlement to recovery occurred in East Baton Rough Parish. Further support for this decision is the fact that plaintiffs also seek a declaratory judgment which would have statewide, as opposed to purely local, effect. Therefore, under La. R.S. 13:5104(A), venue is not proper in Bossier Parish, where the plaintiffs are domiciled, or Caddo Parish, but is only proper under La. R.S. 13:5104(A) in East Baton Rouge Parish.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the trial court's judgment is reinstated.
REVERSED.
CALOGERO, Chief Justice, dissents and assigns reasons.
KIMBALL and KNOLL, JJ., concur in result only.
CALOGERO, Chief Justice, Dissents and Assigns Reasons.
Because I disagree with the majority's finding that the plaintiffs herein "seek recovery based on administrative decisions" of defendant, Louisiana Patient's Compensation Fund Oversight Board ("PCFOB"), I respectfully dissent. Plaintiffs herein are not complaining of simple "administrative decisions," but instead assert claims sounding in tort, as is evident from the majority's own description of the plaintiffs' claims. The majority states as follows: "Essentially, plaintiffs argue that the PCFOB arbitrarily and capriciously failed to settle and pay their claims as required under the medical malpractice statute." According to plaintiffs, the PCFOB violated its obligation to protect medical malpractice plaintiffs when it arbitrarily and capriciously (negligently or intentionally) violated its duty of good faith under La. Rev.Stat. 40:1299.44(D) to settle or pay their claims in a fair and reasonable manner, as well as its fiduciary duties to medical malpractice claimants.
The majority's characterization of the plaintiffs' claims as "administrative" ignores the reality of the situation presented by these consolidated cases. The term "administrative" is defined by Black's Law Dictionary, inter alia, as "having the character of executive or ministerial action." Black's Law Dictionary, Abr. 5th Ed. (West, 1983). Thus, Black's equates an "administrative" decision with a "ministerial" decision. This court has most recently defined "ministerial" as follows: "Ministerial duties are duties in which no element of discretion is left to the public officer." Hoag v. State, 04-0857, p. 7 (La.12/01/04), 889 So.2d 1019, 1024. The court further stated in Hoag that a "ministerial duty is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." Id. Viewed in this light, the actions of the PCFOB complained of by the plaintiffs herein are neither ministerial nor administrative because the PCFOB clearly exercises discretion during its decision-making process.
*28 The majority finds herein that, pursuant to La.Rev.Stat. 13:5104(A), East Baton Rouge Parish is the only parish of proper venue when an administrative or ministerial decision of a state agency is contested because it is both "the district in which the state capital is located" and "the district court having jurisdiction in the parish in which the cause of action arises." Even if the majority's conclusion in that regard is correct, it follows logically that, where the actions of the state agency complained of are something other than administrative or ministerial actions, venue might be appropriate in some forum other than East Baton Rouge. In addition to "the district in which the state capital is located," La.Rev. Stat. 13:5104(A) provides for venue in the "district court having jurisdiction in the parish in which the cause of action arises." On the strength of the pleadings, accepting as true the allegations contained in the plaintiffs' petitions, the plaintiffs' cause of action arose in Bossier Parish, where the plaintiffs allegedly suffered damages resulting from the defendant's arbitrary and capricious failure to settle or pay their claims. Thus, I would deny the exception of venue and remand to the district court for further proceedings.
NOTES
[1] This Court has recently held that a wrongful death medical malpractice action against a political subdivision under La. R.S. 13:5104(B) arises at the time of death, and that therefore venue is proper in the parish where the malpractice victim died, even though all the wrongful conduct occurred in another parish. Wharton v. Ridgell, 05-0069 (La.1/19/06), 922 So.2d 461 (Justices Weimer, Traylor and Victory dissenting).
[2] Courts that have found that La. R.S. 13:5104(A) is permissive and have instead applied the various general venue exceptions include: Taylor v. Clement, 02-561 (La.App. 3 Cir. 12/4/02), 832 So.2d 1089, writ denied, 03-0038 (La.3/28/03), 840 So.2d 571 (applying La. C.C.P. art. 73); Williams v. State ex rel. Dept. of Social Services, 35,928 (La.App. 2 Cir. 4/3/02), 813 So.2d 1206, writ denied, 02-1279 (La.8/30/02), 823 So.2d 955 (applying La. C.C.P. art. 73); V.C. Nora, Jr. Bldg. and Remodeling, Inc. v. State through Dept. Of Transp. and Development, 635 So.2d 466 (La. App. 3 Cir.1994) (applying La. C.C.P. art. 76); James v. State Farm Mut. Auto. Ins. Co., 597 So.2d 555 (La.App. 1 Cir.1992).
[3] In Underwood, the tort victim's injury by the initial tortfeasor allegedly was worsened by medical malpractice at the hospital where he was taken for treatment, and both alleged tortfeasors were political subdivisions of the state. In cumulated action in the domicile of the initial tortfeasor, the medical malpractice tortfeasor claimed entitlement to preferred venue under La. R.S. 13:5104(B). The Court, concluding that the legislature did not envision the preferred venue of La. R.S. 13:5104(B) to entitle each political subdivision to require separate trials of the same operative facts, applied the doctrine of ancillary venue to resolve this "unprovided for" situation.
[4] We note that Article 84, while found in the exceptions to the general venue provision of Article 42. However, it is arguable whether these systems and funds are technically "state agencies." In any event, this is a specific provisions for these specific entities, and this provision undoubtedly applies to them regardless of our holding today that the exceptions found in Articles 71-85 do not apply to the state or state agencies.
[5] Three justices dissented, disagreeing with the application of Walls and Landry, which addressed "when" a cause of action arises, to the venue issue. As stated by Justice Weimer, Walls and Landry "addressed theories of recovery and when the cause of action arose, not the issue of venue which addresses a consideration of the most convenient situs for a trial and where the cause of action arose." Wharton, supra at 466 (Weimer, J., dissenting) (citing Keele v. Knecht, 621 So.2d 106 (La. App. 2 Cir.1993)).
[6] We note that several courts have held that in a direct tort action, venue under La. C.C.P. art. 74 is the place where the wrongful conduct occurred, not where the plaintiff happened to be located when the conduct caused his damages. In Chambers v. LeBlanc, this Court held that venue for a legal malpractice action was proper under Article 74 either in the parish where the alleged malpractice occurred or in the parish of the attorney's domicile, but not in the parish of plaintiff's domicile even if the damage progresses in that parish. 598 So.2d 337 (La.1992). Similarly, in Keele v. Knecht, supra, medical treatment in one parish allegedly led to the deterioration of the patient's condition and death in another parish. The court found the mere fact that damages may have progressed to a parish otherwise unconnected with the proceedings and that the child died there did not make that parish a proper venue under Article 74. See also In re Medical Review Panel of Bechet, 609 So.2d 982 (La.App. 4 Cir.), writ granted in part and judgment amended by 612 So.2d 71 (La.1993). Belser v. St. Paul Fire & Marine Ins. Co., 509 So.2d 12 (La.App. 1 Cir.1987).