5 So.3d 187 (2008)
Elonda EALEM, et al.
v.
PREVOST MEMORIAL HOSPITAL.
No. 2008-C-0064.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 2008.
*188 Rene J. Pfefferle, Watson, Blanche, Wilson & Posner, Baton Rouge, La., for Defendant-Relator.
Richard A. Tonry, Michael C. Ginart, Jr., Kim C. Jones, Cullen A. Tonry, Jeremy K. Lee, Law Office of Tonry & Ginart, LLC, Chalmette, Louisiana, for Plaintiff-Respondent.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge TERRI F. LOVE).
DENNIS R. BAGNERIS, SR., Judge.
Relator, West Ascension Parish Hospital Service District d/b/a Prevost Memorial Hospital (hereinafter referred to as "relator" or "Prevost"), seeks review of a judgment signed on December 17, 2007, which denied its exception of improper venue.

FACTS
Plaintiffs, Elonda Ealem, administrator of the Succession of Herbert Ealem, Sr., Herbert Ealem, Nila E. Canty and Latoya Ealem, are heirs of Herbert Ealem, Sr. (hereinafter referred to collectively as "plaintiffs") who reside in Ascension Parish.
Plaintiff filed a wrongful death claim against relator and Dr. Glenn D. Schexnayder for an alleged failure to diagnose Mr. Ealem's stomach cancer. Specifically, on January 7, 2004, Herbert Ealem, Sr., sought medical treatment for stomach pains. Plaintiffs assert that Mr. Ealem first sought treatment from Dr. Glenn Schexnayder of Lake Ascension Physicians, *189 who allegedly diagnosed him as having an "acid problem." Plaintiffs aver that Mr. Ealem later sought treatment at relator's facility in Ascension Parish and Charity Hospital in New Orleans. Allegedly, neither hospital diagnosed correctly Mr. Ealem's stomach cancer. Eventually, doctors at Earl K. Long Hospital at Baton Rouge discovered Mr. Ealem's stomach cancer. However, the diagnosis came too late and Mr. Ealem died while hospitalized at Touro Infirmary in New Orleans.
Plaintiffs brought suit against the present defendants on October 20, 2006, in Orleans Parish. Relator first filed an exception of improper venue in late 2006, wherein it alleged that venue would only be proper in Ascension Parish. Relator allegedly claimed that of all the named defendants it was the only hospital service district as defined by La. R.S. 46:1072 and that suit could only be brought in Ascension Parish, its domicile, by virtue of La. R.S. 13:5104. Plaintiffs allege that they filed an opposition memorandum to relator's 2006 exception wherein they pointed out that Charity Hospital, a co-defendant at the time, was also a hospital service district and that venue was proper in Orleans Parish under the ancillary venue rule as discussed in Underwood v. Lane Memorial Hospital, 97-1997 (La.7/8/98), 714 So.2d 715.
Charity Hospital was subsequently dismissed from the case, and relator filed a second exception of improper venue in November 2007. The parties argued the merits of relator's second exception on December 7, 2007. The trial court denied the exception and signed a judgment on December 17, 2007, which memorialized its ruling. Thereafter, Relator sought writs from this Court. On April 18, 2004, this Court denied Relator's writ finding:
La. R.S. 46:1063 is not an exclusive venue provision that supersedes La. R.S. 13:5104(B). Plaintiffs' wrongful death claim can proceed in Orleans Parish because the decedent died in Orleans Parish, and La. R.S. 13:5104(B) provides that venue in a suit against a political subdivision is proper if brought in a parish in which the cause of action arose. See Wharton v. Ridgell, XXXX-XXXX, p. 6. (La.1/19/06), 922 So.2d 461, 464.
Thereafter, the Louisiana Supreme Court granted Relator's writ application and remanded the writ to this Court for briefing, argument and opinion. After hearing oral arguments, and reviewing the additional briefs, we hereby deny the writ application for the following reasons.

DISCUSSION
Relator argues that the trial court erred when it failed to find that Ascension Parish is the only proper venue for plaintiffs' suit. Specifically, relator grounds its case on the application of La. R.S. 46:1063 to the facts of the case. Specifically, La. R.S. 46:1063 states:
The police jury creating a hospital service district, with corporate powers, shall designate the domicile of such corporation, at which domicile it shall be sued and service of citation made on the director, and in his absence, upon the chairman of the commission, and in his or their absences, then upon the vice chairman of the commission; provided that in fixing the domicile of the district the police jury shall at all times fix the same at some place within the district.
Relator contends La. R.S. 46:1063 is a specific statute which provides an exclusive venue provision. Thus, relator asserts that it can only be sued in district court in Ascension Parish because it is a hospital service district domiciled in Ascension Parish.
*190 Plaintiffs argued to the trial court that while La. R.S. 46:1063 provides the general venue rule for hospital service districts, La. R.S. 13:5104(B) indicates that venue is proper in New Orleans. Specifically, La. R.S. 13:5104(B) provides:
All suits filed against a political subdivision of the state or against an officer or employee of a political subdivision for conduct arising out of the discharge of his official duties or within the course and scope of his employment shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises.
Plaintiffs assert that the foregoing provision is applicable to their case because: 1) relator is a political subdivision of the state pursuant to La. R.S. 46:1064(A); and 2) their wrongful death cause of action arose in Orleans Parish because the decedent died while at Charity Hospital in New Orleans.[1] Further, plaintiffs cited to this Court's opinion in McDaniel v. Reed, 613 So.2d 758 (La.App. 4 Cir.1993), for the proposition that La. C.C.P. art. 73, which concerns proper venue among solidary obligors, is an applicable exception to La. R.S. 46:1063. As previously noted, the trial court denied relator's exception, thus finding presumably that venue is proper in Orleans Parish.
A review of the law and jurisprudence reveals that the present issue has not been addressed squarely by this Court. At the outset, it should be noted that plaintiffs are correct when they assert that La. R.S. 13:5104(B) is applicable to this case. Specifically, the Supreme Court has held that the use of the word "shall" in La. R.S. 13:5104(B) "indicates a legislative intent that a single political subdivision can be sued only in one of two specified parishes and that no other exceptions are applicable." Underwood v. Lane Memorial Hospital, 1997-1997, p. 5 (La.7/8/98), 714 So.2d 715, 718. Further, in Colvin v. Louisiana Patient's Compensation Fund Oversight Board, XXXX-XXXX, pp. 10-11 (La.1/17/07), 947 So.2d 15, 22, the Supreme Court interpreted La. R.S. 13:5104(A), which applies to the state and its agencies, and held:
We find that suits against the state or state agencies are not governed by the general venue provisions and exceptions found in Louisiana Code of Civil Procedure Articles 42 and 71 through 85. Instead, the general provisions for the state or state agencies are found at La. R.S. 13:5104(A), and this general venue provision governs, unless a more specific venue governing a specific state agency is found elsewhere in the Revised Statutes.
An examination of La. R.S. 13:5104 reveals that, with the exception of the word shall and the inclusion of language covering officers and employees of state agencies, subsection (B) is essentially identical to subsection (A). Thus, the jurisprudence indicates that suits against political subdivisions of the state, such as hospital districts, are not governed by the general venue provisions and exceptions found in the Code of Civil Procedure. Rather, the Supreme Court has indicated that La. R.S. 13:5104(B) is the general venue provision governing suits against political subdivisions *191 unless a more specific venue provision is found elsewhere in the statutes.
Therefore, this Court is now tasked with interpreting La. R.S. 46:1063. In determining the meaning of the statute, this Court looks to the applicable rules of statutory construction. The fundamental question in all cases of statutory interpretation is legislative intent. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX, p. 11 (La.6/29/01), 808 So.2d 294, 302. The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. Stogner v. Stogner, XXXX-XXXX, p. 5 (La.7/7/99), 739 So.2d 762, 766. The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. SWAT 24 Shreveport Bossier, XXXX-XXXX at p. 11, 808 So.2d at 302. A statute must be applied and interpreted in a manner that is logical and consistent with the presumed purpose and intent of the legislature. Id., XXXX-XXXX at p. 12, 808 So.2d at 302.
Further, it is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. Sultana Corporation v. Jewelers Mutual Insurance Company, XXXX-XXXX, p. 9 (La.12/3/03), 860 So.2d 1112, 1119. As a result, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause or word as meaningless and surplusage if a construction giving force to, and preserving, all words can legitimately be found. Colvin v. Louisiana Patient's Compensation Fund Oversight Bd., XXXX-XXXX, p. 6 (La.1/17/07), 947 So.2d 15, 20. Finally, it is presumed that the legislature acts with full knowledge of well-[settled] principles of statutory construction. Sultana Corporation, XXXX-XXXX at p. 9, 860 So.2d at 1119.
In addition to the foregoing judicial principles which are guides to determine the intent of the legislature, La. R.S. 1:3 provides:
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
The word "shall" is mandatory and the word "may" is permissive.
The issue before this Court is whether, by using the phrase "shall," the legislature intended for La. R.S. 46:1063 to be an exclusive venue provision that supersedes La. R.S. 13:5104(B). Relator argues that the article's use of the word "shall" supports such a construction. However, with respect to venue statutes the Supreme Court has observed:
As this Court has recognized, "[i]n the context of venue, the permissive `may' and the mandatory `shall' have often been interchanged." Underwood, supra at 717. "Indeed, Article 42, the general venue statute, employs the word "shall" to define the general venue for different types of defendants, yet is subject to the numerous statutory exceptions." Id. (citing Gurtler, Hebert & Co. v. Marquette Casualty, Co., 145 So.2d 145 (La. App. 4 Cir.1962)) (holding that "may" in venue provision involving enforcing private works is mandatory); and see also 3 A Norman J. Singer, Sutherland Statutory Construction § 67.04 (5th ed.1992) *192 (noting that venue provisions should be liberally construed). Thus, in spite of the rule in La. R.S. 1:4 that "may" is permissive, that is clearly not always the case when it comes to venue statutes, which makes sense when we recognize that venue is basically a convenience factor as opposed to a jurisdictional factor, giving consideration to the particular action and the particular parties. Indeed, when multiple parties are involved, venue may be "mandatory" in a different court for each defendant, yet that does not mean that the case will not be ultimately heard in a court that is proper for one party but not the others under the concept of ancillary venue.

Colvin, XXXX-XXXX, at pp. 7-8, 947 So.2d at 20.
Therefore, the mere use of the word "shall" does not necessarily indicate a legislative intent to make La. R.S. 46:1063 an exclusive venue statute.
This Court's review of the statutory law reveals that statutes which have been interpreted to provide exclusive venue provisions for certain state agencies often contain language that is more specific than La. R.S. 46:1063. For example, La. R.S. 56:7 provides:
A. (1) The domicile of the Louisiana Wildlife and Fisheries Commission is and shall be in Baton Rouge, Louisiana. However, the Seafood Division, within the Department of Wildlife and Fisheries, shall remain located in the city of New Orleans.
(2) Service of citation and other process directed to the commission shall be made by handing the citation or other process to the secretary of the Louisiana Department of Wildlife and Fisheries. All suits in its behalf shall be brought in the name of the Louisiana Wildlife and Fisheries Commission.
B. Any person in interest who feels aggrieved by any rule, regulation, or other action adopted by the Louisiana Wildlife and Fisheries Commission, including an action by one who seeks the closure or modification of any hunting season in any part of the state, may test its legality in a court of competent jurisdiction at the domicile of the commission. [Emphasis added.]
In Demolle v. Louisiana Dept. of Wildlife & Fisheries, 580 So.2d 1083 (La.App. 4 Cir.1991), this Court interpreted the foregoing statute to mean that East Baton Rouge Parish is the exclusive venue for suits against the Wildlife and Fisheries Commission and rejected the plaintiffs' assertion that La. R.S. 13:5104(A) could also be used to establish venue. This Court reiterated its interpretation in Jurisich v. Seafood Div. of Louisiana Dept. of Wildlife and Fisheries, 1995-2049 (La.App. 4 Cir. 5/15/96), 676 So.2d 600, and the Third and Fifth Circuits followed this Court's position in, respectively, Boothe v. Catahoula Parish Police Jury, XXXX-XXXX (La. App. 3 Cir. 12/8/99), 768 So.2d 53, and State, Dept. of Wildlife and Fisheries v. Vanacor, 1994-689 (La.App. 5 Cir. 12/28/94), 648 So.2d 1078.
Further, in regards to suits against the Department of Public Safety and Corrections, La. R.S. 15:1177(A) provides in part:
Any offender who is aggrieved by an adverse decision, excluding decisions relative to delictual actions for injury or damages, by the Department of Public Safety and Corrections or a contractor operating a private prison facility rendered pursuant to any administrative remedy procedures under this Part may, within thirty days after receipt of the decision, seek judicial review of the decision only in the Nineteenth Judicial District Court or, if the offender is in the physical custody of the sheriff, in *193 the district court having jurisdiction in the parish in which the sheriff is located.[2] [Emphasis added.]
Additionally, in regards to review of administrative decisions made by the Office of Risk Management La. R.S. 49:964(B) provides in part:
B. Proceedings for review may be instituted by filing a petition in the district court of the parish in which the agency is located within thirty days after mailing of notice of the final decision by the agency or, if a rehearing is requested, within thirty days after the decision thereon. [Emphasis added.]
This Court interpreted the foregoing statute accordingly:
The Office of Risk Management is part of the Division of Administration, which is part of the Governor's Office. See La. R.S. 39:1528; La. R.S. 36:4(B)(1)(a). Thus, suits seeking judicial review of decisions by the Office of Risk Management must be filed in East Baton Rouge (the parish where the Governor's Office is located). The trial court erred when it denied the State's exception of improper venue.

Hankton v. State, XXXX-XXXX, p. 1 (La. App. 4 Cir. 9/8/04), 885 So.2d 601.
A review of the foregoing statutes indicates that they all contain language that indicates a legislative intent to limit venue in suits against the specified state agencies to specific parishes. Aside from the word "shall," which in the venue context does not necessarily indicate a mandatory legislative directive, La. R.S. 46:1063 contains no specific language similar to the foregoing statutes.
Additionally, this Court's review of the jurisprudence reveals several cases of special significance to the present controversy. For example, in White v. Beauregard, XXXX-XXXX (La.App. 3 Cir. 3/6/02), 809 So.2d 1275, reversed, XXXX-XXXX (La.6/14/02), 821 So.2d 481, a patient's widow filed a wrongful death medical malpractice suit against a hospital service district, several doctors, and the doctors' medical malpractice insurers regarding treatment that the patient received. The widow filed suit in the parish where the decedent died, although the hospital service district was domiciled in another parish. The hospital service district filed an exception of improper venue wherein it argued that La. R.S. 46:1063 applied to the facts of the case and thus suit could only be brought in the parish were the hospital service district was domiciled. The widow argued that suit was properly brought in the parish where the decedent died pursuant to La. R.S. 13:5104(B).
The trial court rejected the hospital service district's exception. The hospital service district appealed and the Third Circuit held that venue was proper in the parish where the decedent died, even though the action was brought in a parish that was not the domicile of hospital service district. Significantly, the Third Circuit eschewed application of La. R.S. 13:5104(B) and instead applied La. C.C.P. art. 73 in order to hold that the hospital, as a solidary obligor, could be sued in the parish where another solidary obligor was located.
The hospital service district sought review of the Third Circuit's decision and the Supreme Court granted writs, reversed and remanded. In a per curiam opinion, the Supreme Court wrote:
In Underwood v. Lane Memorial Hospital, 97-1997, at p. 5 (La.7/8/98), 714 So.2d 715, 718, we held that the use of the word "shall" in La.Rev.Stat. *194 13:5104(B) "indicates a legislative intent that a single political subdivision can be sued only in one of the two specified parishes and that no other exceptions are applicable." The court of appeal therefore erred in applying La.Code Civ. Proc. art. 73 to this case. Accordingly, the judgments of the trial court and court of appeal are reversed. The matter is remanded to the trial court which is instructed to grant defendant's motion of improper venue.

White v. Beauregard Memorial Hosp., XXXX-XXXX, p. 1 (La.6/14/02), 821 So.2d 481.
Thus, the Supreme Court rejected the conclusion that La. C.C.P. art. 73 was applicable to venue disputes involving state agencies and reversed on the basis that La. R.S. 13:5104(B) is the sole applicable venue statute. What is quizzical about the Supreme Court's reversal is the fact that the parish in which the widow brought suit was also the parish in which the patient died. Thus, it is arguable that venue was in fact proper pursuant to La. R.S. 13:5104(B) and the long-established principle that a wrongful death cause of action arises upon the death of the decedent and in the parish where the decedent is situated at the time of death. See McDaniel, 613 So.2d at 760. However, the Supreme Court's White per curiam has the unintended effect of nullifying this principle.
Nevertheless, it is worth noting that the Supreme Court's White per curiam has never been cited in connection with La. R.S. 46:1063. However, the White per curiam has been referenced in support of the proposition that La. R.S. 13:5104(B) is applicable to hospital service districts. For example, in Risener v. Hospital Service District No. One of The Parish of Terrebonne, 2001-2755 (La.App. 1 Cir. 11/8/02), 834 So.2d 480, a doctor who had been sued for malpractice but denied malpractice coverage brought suit in Lafourche Parish, where the doctor practiced, against his former self-insured employer, the Hospital Service District Number One of Terrebonne Parish. The hospital service district filed an exception of improper venue arguing that venue was proper only in Terrebonne Parish, its parish of domicile. The trial court denied the exception and the hospital service district appealed.
On appeal, the First Circuit stated:
Venue in an action against a hospital district is governed by La. R.S. 13:5104B. See La. R.S. 46:1064. La. R.S. 13:5104B provides for two possible venues: (1) the judicial district in which the political subdivision is located, and (2) the district court having jurisdiction in the parish in which the cause of action arises. A political subdivision can be sued only in one of the two specified parishes and no other exceptions are applicable. White v. Beauregard Memorial Hospital, 02-0902 (La.6/14/02), 821 So.2d 481.

Risener, 2001-2755, p. 3, 834 So.2d at 482.
Following this pronouncement, the First Circuit affirmed the trial court and held that venue was proper in Lafourche Parish because that is the parish where the physician's cause of action arose. The Supreme Court denied writs. See Risener v. Hospital Service District No. One of The Parish of Terrebonne, XXXX-XXXX (La.3/21/03), 840 So.2d 536.
The First Circuit Court of Appeals has recently addressed this issue in Black v. St. Tammany Parish Hospital, 994 So.2d 113 (La.App. 1 Cir.2008). Black involved a whistleblower action initiated by a former employee of a family medical clinic against the clinic's owner, the St. Tammany Parish Hospital, and several of its employees. The issue was whether the trial court erred in sustaining the defendants' declinatory *195 exception raising the objection of improper venue, thereby transferring the suit to St. Tammany Parish, where St. Tammany Parish Hospital is domiciled, when all of the alleged acts of retaliation and the plaintiff's ultimate termination occurred at her former place of employment in Washington Parish. In reversing the trial court judgment, the First Circuit applied La. R.S. 13:5104(B) and the rationale of Risener to find that venue is proper in Washington Parish, the parish where the cause of action arose.
In conclusion, this Court's research reveals that the result reached by the Supreme Court in White, though apparently contrary to the stated facts and the law, suggests that relator's proposed construction of La. R.S. 46:1063 might be proper. Nevertheless, the balance of the analysis indicates that La. R.S. 46:1063 should not be interpreted as an exclusive venue provision that supersedes La. R.S. 13:5104(B). Specifically, the following factors militate against the relator's proposed construction of La. R.S. 46:1063: 1) the Supreme Court has stated that the words "shall" and "may" are interchangeable in the context of venue statutes; 2) other statutes that have been interpreted to provide exclusive venue provisions for state agencies contain language that is more specific than that found in La. R.S. 46:1063; 3) in White, XXXX-XXXX, p. 1, 821 So.2d 481, the Supreme Court applied La. R.S. 13:5104(B) to a venue dispute concerning a hospital service district; 4) citing to White, the First Circuit held in Risener, 2001-2755, p. 3, 834 So.2d at 482, that venue in an action against a hospital service district is governed by La. R.S. 13:5104(B); and 5) citing to Risener, the First Circuit held in Black, 994 So.2d 113, that venue is proper in parish where the cause of action arose.
Accordingly, this Court holds that La. R.S. 46:1063 is not an exclusive venue provision that supersedes La. R.S. 13:5104(B). Thus, plaintiffs' wrongful death claim can proceed in Orleans Parish because the decedent died in Orleans Parish, and La. R.S. 13:5104(B) provides that venue in a suit against a political subdivision is proper if brought in a parish in which the cause of action arose. See Wharton, XXXX-XXXX, p. 6. (La.1/19/06), 922 So.2d at 464. Therefore, we hereby deny relator's writ application.
WRIT DENIED.
LOVE, J., Concurs and Assigns Reasons.
LOVE, J., Concurs and Assigns Reasons.
I respectfully concur with the majority's denial of relator's application for writ. However, I write separately to address the rationale for the conclusion that Orleans Parish remains a proper venue for suit as to relator, which is not domiciled in Orleans Parish.
Relator argues that whereas there were originally two political subdivision defendants in the suit (Prevost Memorial Hospital and Charity Hospital), because it is the only remaining hospital service district in the suit, its Ascension Parish domicile is the appropriate venue. However, I find that Orleans Parish continues to be one of the two appropriate venues delineated in La. R.S. 13:5104(B).
While the general venue rule provided in La. R.S. 46:1063 requires that a hospital service district be sued at in the parish in which it is domiciled, La. R.S. 13:5104(B) is an ancillary venue provision, which provides:
All suits filed against a political subdivision of the state or against an officer or employee of a political subdivision for conduct arising out of the discharge of his official duties or within the course *196 and scope of his employment shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises. (Emphasis added.)
Moreover, in Underwood v. Lane Memorial Hospital, 97-1997, pp. 5-6 (La.7/8/98), 714 So.2d 715, 717-718, the Louisiana Supreme Court espoused the principle that a single political subdivision can be sued only in one of two parishes according to this ancillary venue provision as follows:
Nevertheless, the fact that the Legislature in 1985 expressly deleted the word "may" and substituted the word "shall" in Section 5104 B indicates a legislative intent that a single political subdivision can be sued only in one of the two specified parishes and that no other exceptions are applicable. When a single political subdivision is the only defendant, the choice of venues provided by Section 5104 B is logical and consistent with the legislative intent that a political subdivision generally must be sued at its "home base" or in the parish which gave rise to the cause of action. And even when a political subdivision is one of several defendants, that legislative intent arguably is still applicable, especially when a parish of proper venue under Section 5104 B is also proper venue for the other defendants. However, when two political subdivisions located in different parishes are joined as defendants and alleged to be joint or solidary obligors as to the same transaction or occurrence, additional policy considerations enter into the determination of legislative intent. (Emphasis added.)
Underwood, 97-1997, pp. 5-6, 714 So.2d at 717-718.
Further, as to policy considerations, "[v]enue is basically a convenience factor as opposed to a jurisdictional factor, giving consideration to the. particular action and the particular parties." Colvin v. Louisiana Patient's Compensation Fund Oversight Bd., 06-1104, pp. 7-8 (La.1/17/07), 947 So.2d 15, 20. "When multiple parties are involved, while venue may be `mandatory' in a different court for each defendant, that does not mean that the case will not be ultimately heard in a court that is proper for one party but not the others under the concept of ancillary venue." Colvin., 06-1104, p. 8, 947 So.2d 15, 20-21. Ancillary venue provisions such as La. R.S. 13:5104(B) "allow such claims to be tried together for reasons of judicial economy and efficiency, even though venue is not proper technically for one claim or one party." Underwood, 97-1997, p. 8, 714 So.2d 715, 719.
In the instant matter, Orleans Parish was proper in the original suit for two reasons: 1) Charity Hospital is a hospital service district domiciled in Orleans Parish; and 2) plaintiffs instituted a wrongful death action, which accrued at place of death of Mr. Ealam, Orleans Parish, the parish that gave rise to the wrongful death action. However, once Charity Hospital was dismissed from the suit, the domicile of Charity Hospital in its capacity as a hospital service district ceased to be an issue in the determination of whether grounds to support proper venue in Orleans Parish remained. Nevertheless, Orleans Parish continued to be a proper venue as to the plaintiffs' wrongful death action.
I conclude that the cause of action for venue purposes arose in Orleans Parish because that is where the operative facts occurred that support plaintiffs' entitlement to recovery for wrongful death. Under Louisiana jurisprudence, given that Mr. Ealem's death occurred in Orleans Parish, plaintiffs' cause of action for *197 wrongful death under La. R.S. 13:5104(B) arose in Orleans Parish. Wharton v. Ridgell, 05-0069, pp. 7-8 (La.1/19/06), 922 So.2d 461 at 464, 465. This conclusion is a direct result of plaintiffs' injuries for wrongful death not arising until the time of Mr. Ealam's death. Id. Thus, although only one hospital service district domiciled in Ascension Parish remains a party to the suit, and Charity Hospital of Orleans Parish domicile was dismissed, suit is still proper as to relator in Orleans Parish.
NOTES
[1] See Wharton v. Ridgell, XXXX-XXXX (La. 1/19/06), 922 So.2d 461, for the principle that a wrongful death cause of action arises upon the death of the decedent and in the parish where the decedent is situated at the time of death. Thus, the Supreme Court in Wharton held that a wrongful death action against a political subdivision under La. R.S. 13:5104(B) is proper in the parish where the decedent died even though all wrongful conduct occurred in another parish.
[2] Note, however, that the foregoing statute has been held unconstitutional insofar as it applies to tort actions. See Pope v. State, 99-2559 (La.6/29/01), 792 So.2d 713.