STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**19-766**


WINMILL TIRE, LLC, ET AL.

VERSUS

COLT, INC., ET AL.


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 16-C-4386-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**PHYLLIS M. KEATY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**James P. Ryan**
**Richard T. Haik, Jr.**
**Kathleen E. Ryan**
**Richard T. Haik, Sr.**
**Morrow, Morrow, Ryan, Bassett & Haik**
**Post Office Drawer 1787**
**Opelousas, Louisiana  70571-1787**
**(337) 948-4483**
**Counsel for Plaintiffs/Appellees:**
      **Winmill Tire, LLC**
      **Winmill Specialties, Inc.**
      **Dayroo Sales, LLC d/b/a Automotive Gear**
      **A.J. Price, Inc.**
      **Waiting for the Sun, LLC**
      **Quality Tire & Car Care**
      **Albritton's Service Center, LLC**
      **West Carroll Hardware**

**Kyle L. Gideon**
**Theodore G. Edwards, IV**
**Davidson, Meaux, Sonnier, McElligott,**
**Fontenot, Gideon & Edwards, LLP**
**Post Office Drawer 2908**
**Lafayette, Louisiana  70502-2908**
**(337) 237-1660**
**Counsel for Defendant/Appellant:**
      **Colt, Inc.**

**David P. Doughty**
**M. Kyle Moore**
**Cotton, Bolton, Hoychick & Doughty, L.L.P.**
**Post Office Box 857**
**Rayville, Louisiana  71269**
**(318) 728-2051**
**Counsel for Defendant/Appellant:**
      **Franklin-Rubber Resources, LLC**

**Bryan D. Scofield**
**James T. Rivera**
**Jessica W. Marchand**
**Scofield & Rivera, LLC**
**Post Office Box 4422**
**Lafayette, Louisiana  70502**
**(337) 235-5353**
**Counsel for Defendant/Appellant:**
      **Benson Environmental Services of Louisiana, Inc.**

**David H. Ogwyn**
**Ogwyn Law Firm, L.L.C.**
**Post Office Box 1942**
**Baton Rouge, Louisiana  70821**
**(225) 302-7188**
**Counsel for Defendant/Appellant:**
      **EIR, Inc.**

**KEATY, Judge.**

Defendants/Appellants appeal a partial summary judgment rendered in a declaratory judgment action in favor of Plaintiffs and a denial of Defendants' motions for summary judgment regarding whether Defendants, who are in the business of waste tire transporting and processing, can charge a fee to the waste tire generators for the transportation of waste tires from Plaintiff generators to their processing facilities above the fees statutorily provided in Louisiana's waste tire laws and regulations. For the following reasons, the trial court's judgment is affirmed.

## FACTS & PROCEDURAL HISTORY

The Solid Waste Recycling and Reduction Law governs the disposal of waste tires and was first enacted by 1989 La. Acts No. 185, § 1, which established La.R.S. 30:2411-2422. In 1992, La.Admin.Code tit. 33, § 10501 was promulgated in accordance with La.R.S. 30:2411-2423 and contains additional regulations on the disposal and recycling of waste tires in Louisiana. *See* La.Admin.Code tit. 33, §§ 10501-10543. In Louisiana, the waste tire program "shall be administered by the Department of Environmental Quality [('DEQ')]." La.Admin.Code tit. 33, § 10503. The DEQ has the authority to inspect persons subject to these regulations, audit those persons, and enforce the regulations against those persons. La.Admin.Code tit. 33, § 10509.

The Louisiana Administrative Code defines words and phrases used in the regulations. A waste tire is "a whole tire that is no longer suitable for its original purpose because of wear, damage, or defect and/or has been discarded by the consumer." La.Admin.Code tit. 33, § 10505. The regulations recognize three types of businesses involved in the waste tire removal process: generators, transporters, and processors. La.Admin.Code tit. 33, §§ 10519, 10523, and 10525.

A waste tire generator is "a person whose activities, whether authorized or unauthorized, result in the production of waste tires." La.Admin.Code tit. 33, § 10505. A waste tire transporter is "a person who transports waste tires." *Id*. A waste tire processor is a person who "processes waste tires" by any means that "alters whole waste tires so that they are no longer whole; such as cutting, slicing, chipping, shredding, distilling, freezing, or other processes as determined by the administrative authority." *Id*.

Plaintiffs are a group of waste tire generators, such as tire dealers, who replace unserviceable tires with serviceable tires. Defendants Colt, Inc., Benson Environmental Services of Louisiana, Inc., Franklin Rubber Resources, LLC, and EIR, Inc. (collectively referred to as "Defendants"), are permitted waste tire processors. Defendants also have additional permits to qualify as waste tire transporters. Both transporters and processors require individual permits. La.Admin.Code tit. 33, § 10511, 10513, 10523, and 10525. However, to be a transporter, one does not need to be a processor or vice versa. *Id.*

During the fall of 2015 and early 2016, Defendants began charging Plaintiffs a fee to transport waste tires from Plaintiffs' facilities to Defendants' processing facilities. On October 11, 2016, Plaintiffs filed suit against Defendants, seeking to have the fee declared unlawful, the recovery of various damages based on several theories of recovery, and for class certification. Plaintiffs thereafter amended their petition six times. The class has not been certified. Regarding the declaratory judgment, Plaintiffs argued that any fee charged by Defendants, in addition to the DEQ waste tire fee set forth in La.Admin.Code tit. 33, § 10535(B) which must be remitted to the DEQ by Plaintiffs and imposed on each tire sold, is illegal.

On October 22, 2018, Plaintiffs filed a partial motion for summary judgment, seeking a declaration from the trial court that the transportation fee is illegal.

Plaintiffs asserted three main arguments:  the DEQ fee and subsidy for which processors may apply covers both transportation and processing costs and that La.R.S. 30:2418(I) and La.Admin.Code tit. 33, § 10519(G) prohibit Defendants from charging an additional fee; the 2016 revisions to the regulations did not intend to change the responsibility of who pays transporters, but was instead done to incorporate the Processor Agreements; and permitting Defendants to charge Plaintiffs a fee would thwart the purpose of paying transporters after delivery, i.e., which was done to encourage transporters to deliver the waste tires to processors instead of dumping those tires elsewhere.  Plaintiffs relied on and attached copies of the past and present relevant statutes, regulations, and legislative acts, as well as the DEQ 1996 status report and the La.Code Civ.P. art. 1442 depositions of DEQ representatives Dr. Chuck Brown and Ms. Phyllis Luke.  The DEQ position was that the statutes are neutral in that they neither prohibit nor permit Defendants to charge Plaintiffs a fee.

Defendants filed cross motions for summary judgment, arguing that the fee should be declared legal.[1]  Defendants relied on the fact that following the 2016 revisions to the regulations:  no statute or regulation prohibits the charging of such a fee, establishes that the subsidy Defendants may apply for which is funded by the waste tire fee is the sole compensation processors are entitled to, or requires that the subsidy be used by Defendants to pay for transportation costs.  Defendants argued that the subsidy is only to assist processors with waste tire processing and

---

[1] Colt and Benson additionally requested that Plaintiffs' remaining causes of action stated in the petition be dismissed.  Specifically, Colt and Benson argued that if the fee is legal, all other causes of action fail.  However, Plaintiffs filed a Motion to Continue That Portion of the Cross-Motions Brought by Colt and Benson as to Plaintiffs' Causes of Action other than the Legality of the Disputed Fee, and all parties agreed at the summary judgment hearing to continue those issues.  The motion to continue was signed on January 25, 2019.  Thus, the only issue at the summary judgment hearing was Plaintiffs' partial motion for summary judgment and Defendants' cross motions for summary judgment on the legality of the fee charged by Defendants.

marketing costs, which they maintained does not include transporting waste tires from generators to their facilities. In support of their argument, Defendants relied on the deletion in the 2016 amendments of the processors' responsibility to pay transporters as well as the depositions of Ms. Luke and Dr. Brown, who both testified there is nothing prohibiting or permitting Defendants from charging a fee to Plaintiffs. Defendant Colt also attached as an exhibit a comment table for the proposed revisions to La.Admin.Code tit. 33, § 10519, in which Benson requested the language regarding DEQ fees be clarified. The DEQ refused the request and responded that "it does not prohibit any fee that the generator may charge such as an environmental or disposal fee." This document was attached to the motion for summary judgment individually, though it was read by Ms. Luke in her deposition and apparently attached as Exhibit 30 to her deposition. Defendants also objected to Plaintiffs' exhibits.

At the summary judgment hearing, the trial court ruled that Plaintiffs' Exhibit 7, the 1996 status report, was inadmissible on summary judgment. It then determined that only the DEQ Secretary has the power to set fees for the Waste Tire Program. Thus, the trial court found that Defendants did not have the authority to impose fees on Plaintiffs. On February 1, 2019, the trial court signed a written judgment granting Plaintiffs' partial motion for summary judgment and denying Defendants' motions for summary judgment on the fee legality issue.

Both Plaintiffs and Defendants filed a Motion for New Trial. The trial court granted Plaintiffs' motion to correct the February judgment, which declared that "Louisiana Law does not permit or allow waste tire processors to charge a processing or transportation fee to waste tire generators[.]" The trial court determined that "referring to it being unlawful for 'waste tire processors' to charge a processing or transportation fee was legal error in that this matter involves a

4

proceeding in the nature of a Declaratory Judgment and Judgment may be issued only against the named parties." On April 12, 2019, the trial court rendered an amended judgment which ruled that Louisiana law does not permit Defendants, specifically, "to charge a processing or transportation fee to waste tire generators[.]" The trial court granted Plaintiffs' partial motion for summary judgment and denied Defendants' motions for summary judgment. Defendants' subsequent appeals to this court were dismissed because the judgment failed to contain proper decretal language. *See Winmill Tire, LLC v. Colt, Inc.* 19-446 (La.App. 3 Cir. 8/7/19) (unpublished opinion). The trial court again amended the judgment, adding decretal language, and signed the judgment on September 3, 2019.

On appeal, Defendants assert what can be summarized as the following assignment of error: whether the trial court erred in declaring their transportation fee to be unlawful. Each Defendant filed an appellate brief and asserted the following issues for review:

Colt:

1.   Whether La.R.S. 30:2413(A)(8) grants the Secretary of the Louisiana [DEQ] with the exclusive authority to set fees for the Louisiana Waste Tire Program.

2.   Whether the statute and regulations governing the Louisiana Waste Tire Program prohibit a waste tire processor, who is also a permitted waste tire transporter, from charging waste tire generators and tire dealers a transportation fee.

3.   Whether the testimony of the Louisiana [DEQ] that its interpretation of the Waste Tire Program statute and regulations that there is nothing in the law that prohibits a waste tire processor, who is also a waste tire transporter, from charging a transportation fee should be accorded great deference and adopted by the trial court.

Benson:

1.   Whether the [t]rial [c]ourt erred in relying upon [La.]R.S. 30:2413(A)(8) and declaring the transportation fee to be unlawful in light of the language of the [La.]R.S. 30:2413(A)(8);

5

the uncontradicted LDEQ testimony and its interpretation of its regulations; the deference that courts must give to the LDEQ's interpretations; and the LDEQ regulation listing the fees necessary to administer the chapter.

2. Whether the transportation fee is unlawful on the grounds alleged by Plaintiffs.

Franklin Rubber:

1. Whether the [t]rial [c]ourt erred in ruling that the Secretary of the LDEQ has the exclusive authority to set fees for the Louisiana Waste Tire Program under La.R.S. 30:2413(A)(8); based on the language of the statute itself and the uncontradicted testimony of the LDEQ representatives regarding the department's interpretation of its own regulations and the deference that should have been given to the same.

2. Whether any of the statutes and regulations related to the Louisiana Waste Tire Program prohibit a tire processor or transporter from charging a transportation fee to tire dealers/tire generators for the transportation of the waste tires to the tire processors' facilities.

EIR:

1. Can a private enterprise charge for its services to collect, store, transport, and deliver waste tires generated within the state of Louisiana?

**STANDARD OF REVIEW**

Summary judgments are reviewed de novo on appeal, using the same criteria as trial courts in determining whether summary judgment is proper, "i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, p. 4 (La. 2/26/08), 977 So.2d 880, 882-83. "A fact is 'material' when its existence or nonexistence may be essential to [the] plaintiff's cause of action." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 8

(La. 7/2/12), 94 So.3d 750, 755. Summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

## DISCUSSION

In 1989, La. Acts No. 185, § 1 established La.R.S. 30:2413(A)(8), whereby the Secretary was given the power and duty to "adopt, by rules, such fees as may be necessary to administer this Chapter[.]" The statutes governing the transportation of waste tires and the payment therefore were included in the 1992 amendment to La.R.S. 30:2418, 1992 La. Acts No. 664, which established the Waste Tire Management Fund. The Secretary was in charge of promulgating "regulations and guidelines for the administration and enforcement of the waste tire program" which was subject to legislative approval. La.R.S. 30:2418(H). The regulations to be promulgated by the Secretary were to include "[e]stablishing standards, requirements, and permitting procedures for waste tire transporters, collection sites, and processors[,] . . . . [p]roviding incentives and assistance for those persons who collect and remit" the waste tire fee, "[p]roviding incentives and assistance for collection and transportation of waste tires[,]" and "[p]roviding incentives and assistance to waste tire processing facilities[.]" *Id.* The waste tire fee set forth in La.R.S. 30:2413(A)(8) was set at two dollars per new tire. La.Admin.Code tit. 33, § 10515. This fee has changed over the years and now differs depending on the type of tire being sold. *See* La.Admin.Code tit. 33, § 10535.

In 1992, La.Admin.Code tit. 33, ch. 105, was promulgated by the DEQ in accordance with La.R.S. 30:2411. Louisiana Administrative Code Title 33, Section 10515(A), imposed the two-dollar waste tire fee on new tires sold in

7

Louisiana, which fees were to be collected at the time of sale. According to La.Admin.Code tit. 33, § 10515(A)(1), the tire dealer was to retain one dollar "to cover the costs of collection, transportation, processing and disposition of waste tires" and the remaining dollar was to be remitted to the department for "the administration of the waste tire recycling regulations and the cleanup of promiscuous tire piles." *Id*. Additionally, La.Admin.Code tit. 33, § 10515(A)(2) stated, "Nothing herein shall prohibit a tire dealer from including disposal costs within the retail sale price of any tire."

In 1994, La.Admin.Code, tit. 33, § 10535 discussed the distribution of the waste tire fee collected on new tires. Although still set at two dollars per tire, effective January 1, 1995, the full fee was to be remitted to the Waste Tire Management Fund. "[T]he $2 waste tire fee shall be designated as follows: $1 will be utilized to pay waste tire processors that are working under agreement with the administrative authority for the processing of currently generated waste tires[.]" *Id*. Also in 1994, La.Admin.Code tit. 33, § 10515 was amended to explain that processors could apply to the administration for a subsidy "to assist them with waste tire processing and disposal costs." La.Admin.Code tit. 33, § 10515(B) was also amended to provide, "General Conditions of Agreements. It shall be the responsibility of processors to make payments to authorized waste tire transporters who provide them with waste tires." The prior subsection regarding a tire dealer's ability to include disposal costs within the retail sale price of any tire was deleted.

In 2015, the Secretary gave notice that "rulemaking procedures have been initiated to amend the Solid Waste regulations" including Sections 10515, 10516, 10519, and 10535. 2015 La. Reg. Text 410036 (NS). The notice further provided, "All interested persons are invited to submit written comments on the proposed regulation. Persons commenting should reference this proposed regulation by

8

SW062." Furthermore, the section regarding estimated costs or economic benefits to "directly affected persons or nongovernmental groups" stated, "The proposed rule change may result in a cost to directly affected persons or non-governmental groups as a result of increasing the record retention period from 3 years to 5 years[,]" but no additional change in costs for other reasons were noted. *Id.*

In 2016, the Secretary of DEQ amended La.Admin.Code tit. 33, § 10515 with La.Admin.Code tit. 33, § 10516, "Annual Agreements with Waste Tire Processors" (formerly Section 10515). Louisiana Administrative Code Title 33, Section 10516 did not mention the responsibility of making payments to transporters as La.Admin.Code tit. 33, § 10515 previously did. However, the regulation permitting processors to obtain a subsidy remained intact. In 2016, La.Admin.Code tit. 33, § 10535(D) was also amended to provide that the waste tire fee collected on the sale of new tires shall be sent to the Office of Management and Finance and will be designated in the following manner:

> [(D)(2)] a. a minimum of seven and a half cents per pound of whole waste tires and/or waste tire material that is recycled or that reaches an approved end-market use will be utilized to pay permitted waste tire processors that have entered into a processor agreement with the administrative authority, and are in compliance with all applicable requirements of these regulations;
>
> b. a maximum of 10 percent of the waste tire fees collected may be utilized for program administration; and
>
> c. ten percent of the waste tire fees collected may be used for the cleanup of unauthorized waste tire piles and waste tire material.

Furthermore, La.Admin.Code tit. 33, § 10535(E) specifically explained that "Payments made by the state of Louisiana are meant to temporarily supplement the business activities of processors and are not meant to cover all business expenses and costs associated with processing and marketing[,]" and payment is dependent

9

on fund availability. The waste tire fee to be collected by generators currently reads that the fee "shall be listed on a separate line of the retail sales invoice and identified as the 'LDEQ waste tire fee.' The LDEQ waste tire fee shall not include any additional fees. No tax of any kind shall be applied to this fee." La.Admin.Code tit. 33, § 10519(G). However, listing the fee on a separate line of the sales invoice was not new, but was previously discussed in Subsection F prior to the 2019 amendments.

Although not mentioned by the parties on appeal, 2013 La. Acts No. 323, § 1, amended La.R.S. 30:2418 "to provide for payments to waste tire processors," amongst other reasons. Act 323 added the following to Section (H)(6), "Establish a procedure for accepting voluntary payments from tire retailers to defray the costs of transporting and recycling tires collected at those facilities." This section has not been removed.

Thus, the issue before this court is whether the statutes and regulations governing waste tires prohibit or permit Defendants to charge Plaintiffs an additional fee. On statutory construction, the supreme court has stated, "The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. . . . [T]he paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law." *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p. 13 (La. 7/1/08), 998 So.2d 16, 26-27. Statutory interpretation begins with the language of the statute. *Oubre v. La. Citizens Fair Plan*, 11-97 (La. 12/16/11), 79 So.3d 987, *cert. denied*, 567 U.S. 935, 133 S.Ct. 30 (2012). The supreme court in *Oubre* further explained:

> Words and phrases must be read with their context and construed according to the common and approved usage of the language. La.Rev.Stat. § 1:3. "The word 'shall' is mandatory and the

10

word 'may' is permissive." *Id.* Further, every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. *Colvin v. Louisiana Patient's Compensation Fund Oversight Bd.,* 06-1104, p. 6 (La.1/17/07), 947 So.2d 15, 19; *Moss v. State,* 05-1963, p. 15 (La.4/4/06), 925 So.2d 1185, 1196. Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. *Colvin,* 06-1104 at p. 6, 947 So.2d at 19-20; *Moss,*05-1963 at p. 15, 925 So.2d at 1196.

*Id.* at 997.

"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9. Additionally, the United States Supreme Court has explained:

[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149 (1992) (citations omitted). However, "[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La.Civ.Code art. 10. When words are ambiguous, "their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La.Civ.Code art. 12. "It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject." *M.J. Farms, Ltd.*, 998 So.2d at 27.

11

The bottom line of Defendants' argument is that there has never been any statutory language prohibiting Defendants from charging Plaintiffs a fee. On review of the applicable statutes and regulations, we note that in 1992, although generators were paying for transportation and processing costs but keeping half of the DEQ fee, the generators were not prohibited from charging additional fees for disposal costs within the retail sale price of any tire, despite retaining one dollar of the DEQ fee. That language was deleted when the burden of paying transportation costs shifted to the processors. The statutes then required processors to pay transporters but were silent on the processors' ability to charge generators a fee to defray those costs. Now, after 2016, the statutes and regulations are silent as to how transporters get paid at all. Looking at the language and assuming the legislature means what it says, the statutes and regulations do not specifically prohibit or permit the processors from charging a fee to the generators.

Looking for the intent of the legislature, we look to the deposition testimony of Ms. Luke, a Senior Environmental Scientist with the DEQ who worked on the waste tire regulations. She testified regarding the DEQ's position as follows:

> Q.    . . . So this . . . legal opinion was issued . . . and do you know whether or not as a result of that legal opinion whether any action was taken to stop people from charging two waste tire fees?
>
> A.    No. The . . . position of the department was . . . we were neutral in that it was up to either the generator or the processor whether or not they were going to charge additional fees above and beyond what was required in the regulations.

The deposition testimony of Dr. Brown, the Secretary of the DEQ, further provides:

> Q.    From DEQ's perspective, is there anything in the regulation or statute which prohibits a tire processor from charging a transportation fee to a waste tire generator over and above the DEQ disposal fee?
>
> A.    There's nothing that prohibits or authorizes any charging of transportation fees.

Based upon the evidence in the record, the DEQ has taken the position that there is nothing in the regulations that prohibits or permits Defendants from charging additional fees to Plaintiffs.

Additionally, in the prior statutes when the generators were responsible for paying transportation and processing costs, they were permitted to keep half of the DEQ fee out right. When the responsibility of paying for transportation and processing costs changed from the generators to the processors, the processors were not permitted to simply take one dollar per tire. Instead, they were entitled to apply for a subsidy. Although that subsidy may be in an amount equal to that one dollar, the processors had to apply for the subsidy, and the subsidy being paid was based on the weight of processed material. The processors' ability to collect that subsidy was dependent on the amount of funds in the program whereas the 1992 version was not dependent on the availability of funds. Lastly, the regulations regarding the subsidy stated in 1994 that the subsidy was for waste tire processing and disposal costs, which was changed to waste tire processing and marketing costs in 2016. Nothing was specifically said about transportation.

Looking at the history of the statutes and regulations, it has been the responsibility of the processors to pay for transporters from 1992-2016. The law changed when the processor agreements were essentially codified into the regulations, which deleted the section requiring processors to pay transporters. As pointed out by the trial court, it is the Secretary of the DEQ who has been given the power to enact regulations to govern the waste tire program, including all fees. *See* La.R.S. 30:2413(8). The DEQ fee is for the administration of the program, thus arguably the costs for the waste tire process were considered, and it is the Secretary who sets the only fee in relation to the program. However, Defendants argue that the legislature did not state that the Secretary had the *exclusive* authority to set fees

13

for the waste tire program, as it has granted exclusive power in various other places in our revised statutes. Accordingly, Defendants contend that they can charge the disputed fee.

We find Defendants' argument lacks merit based upon statutes and regulations whereby the legislature has set a maximum fee to run the Waste Tire Program, and the DEQ has prohibited any fee that exceeds the authorized fee. This is evident in La.R.S. 30:2418(I)(1)(a), which states:

> The fee on tires authorized to be levied pursuant to R.S. 30:2413(A)(8) shall not exceed the following:
>
> (i)     Beginning October 1, 2018, through July 31, 2022, two dollars and twenty-five cents per passenger/light truck/small farm service tire.  Beginning on August 1, 2022, two dollars per passenger/light truck/small farm service tire.
>
> (ii)    Five dollars per medium truck tire.
>
> (iii)   Ten dollars per off-road tire.

Additionally, La.Admin.Code tit. 33, § 10519(G) (emphasis added), states:

> The waste tire fee established by R.S. 30:2418 shall be listed on a separate line of the retail sales invoice and identified as the "LDEQ waste tire fee." **The LDEQ waste tire fee shall not include any additional fees**.  No tax of any kind shall be applied to this fee.

In their next argument, Defendants point to former La.Admin.Code tit. 33, § 10515(B) wherein it was the responsibility of processors to make payments to waste tire transporters who provided them with waste tires. Defendants correctly note that La.Admin.Code tit. 33, § 10515 was repealed and replaced with La.Admin.Code tit. 33, § 10516, which no longer contains language requiring processors to pay tire transporters. Defendants assert that eliminating this language from the regulation supports their argument that they can charge the disputed fee.

14

However, testimony in the record refutes Defendants' argument. The testimony from Ms. Luke, the DEQ scientist who worked on the 2016 regulatory changes, reveals:

> Q. Well, maybe -- as part of the workgroup, did you . . . ever discuss with – you know, as part of the workgroup, hey, the intent of – one of the intents of what our revision to the regs [sic] is we want to . . . take away the responsibility of the processors to pay the transporters and allow the processors to charge the tire retailers an additional amount? Was that ever discussed, to your knowledge?
>
> A. I do not recall ever having a discussion in that nature.

Ms. Luke further testified that she saw nothing in the regulation summary regarding La.Admin.Code tit. 33, § 10516 that provided for eliminating Subsection F regarding the requirement that processors pay transporters. According to Ms. Luke, Subsection F was eliminated from the regulation because it was not contained in the Processing Agreement. She explained that the purpose of the revision was to place the terms of the Processing Agreement in the regulations.

Other testimony and evidence in the record shows that the purpose of the 2016 revision was not to shift the responsibility to pay transporters from processors to generators. Specifically, Ms. Luke testified regarding the requirement that an economic impact study be submitted with the regulation promulgation. In that regard, the 2016 Fiscal and Economic Impact Statement was submitted into evidence. The statement provides that "There are no anticipated costs to directly affected persons or non-governmental group as a result of the proposed rule."

Dr. Brown also testified about the anticipated costs, as follows:

> Q. I want to ask you if a regulation changes the responsibility of one person to pay money to one party to another party to -- you know, to pay that person, is that something that you think would have an economic impact? That's all I'm asking.
>
> . . . .

15

Q. It's not a hypothetical. I'm just asking you, if that were to occur today, would you say that's an economic impact that ought to be reported?

A. If something like that happened, it would be in a document similar to this.

Q. That's where it would be reported if it happened?

A. It would be stated in a document similar to this.

The record also contains evidence showing that some Defendants started charging the disputed fee prior to 2016, undermining Defendants' reliance on the argument that the section requiring processors to pay transporters was deleted in 2016. This is evident in a letter prepared by Benson which is dated September 30, 2015, and states:

> In 2001, the amount paid to processors was increased to $1.50 per tire.
>
> Unfortunately, that is the last time the payments to processors/transporters was increased and the fee has never been increased. This year, a house bill was up for consideration to increase the fee to $3 and increase the amount paid to processors by $0.30 per tire. The bill was withdrawn from consideration only days after the legislative session began.
>
> This has left the tire processors in the precarious situation of having to begin charging the stores directly for tire recycling. Therefore, we regret to inform you that as of October 10, 2015, all stores with tires delivered to Benson Environmental Services will be subject to the following surcharges.

The letter then lists the surcharges.

Defendants next contend that the subsidy offered by the regulations is not intended to pay for transportation costs. Defendants assert that the subsidy is only required to assist processors with costs associated with the processing and marketing of waste tire material. In support, Defendants cite La.Admin.Code tit. 33, § 10516(A) which states that processors may apply "for funding to assist them with waste tire processing and marketing costs." Defendants also cite La.Admin.Code tit. 33, § 10535(E) wherein it states that payments "are meant to

16

temporarily supplement the business activities of processors and are not meant to cover all business expenses and costs associated with processing and marketing."

In that regard, the record contains Dr. Brown's deposition testimony wherein he opined that the intent of the DEQ fee and subsidy is to cover the cost of both transportation and processing of waste tires. Specifically, the following colloquy occurred:

> Q. Did I understand you to say that it's your opinion that the subsidy they get should be to run the program, meaning the transportation and the processing?
>
> A. Whatever is involved in getting that tire from here to there.
>
> Q. That's what the subsidy should cover?
>
> A. That's my opinion.

Dr. Brown also testified regarding his suggested language in a proposed bill that would have prohibited the disputed fee. The proposed bill, which is in the record on review, is House Bill 1027 of the 2016 legislative session and states in Subparagraph (c): "No person shall charge an amount above the fees authorized by this Subsection for the disposal, transporting, or processing of waste tires. However, the provisions of this Subparagraph shall not apply to the sale or marketing of recycled waste tire material or whole waste tires."

Although the proposed bill did not pass, we find Dr. Brown's suggested language along with his opinion that the DEQ fee and subsidy should cover the costs of both transportation and processing of waste tires is important. It is important considering his position as the Secretary of the DEQ. We also find that other evidence and testimony in the record and discussed throughout this opinion, along with the legislative history of the statutes and regulations governing the disposal of waste tires, refutes Defendants' argument that the subsidy is not

intended to pay for transportation costs.  For the foregoing reasons, the trial court's judgment is affirmed.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed.  All court costs are assessed to Defendants.

**AFFIRMED**.