704 So.2d 961 (1997)
Earl D. ROBBINS, et al., Plaintiffs-Appellants.
v.
STATE of Louisiana, Through STATE LAND OFFICE, et al., Defendants-Appellees.
No. 97-671.
Court of Appeal of Louisiana, Third Circuit.
December 17, 1997.
*962 Robert Ray Earle, Farmerville, for Earl D. Robbins, et al.
Robert H. Carpenter, Jr., for State.
C. Calvin Adams, Jr., Tallulah, for Fifth Louisiana Levee District.
Before COOKS, WOODARD and PICKETT, JJ.
COOKS, Judge.
Appellants contest the district court's grant of a temporary injunction in favor of *963 plaintiffs. They argue Concordia Parish is not the proper venue for this action and the trial court erred in enjoining the State from evicting plaintiffs before it actually initiated any proceedings. For the following reasons, we affirm the trial court's judgment.

FACTS
In April 1951, Earl D. Robbins inquired about the ownership of a swampy and low sand bar area in the south end of Lake St. John in Concordia Parish. After he was informed that the property belonged to the Fifth Levee District, Earl contacted the Levee Board's attorney and inquired whether the property was available for purchase. Earl was told the Levee District would not sell the land but could arrange for a long-term lease, if he would pay to have it surveyed. The survey of the area, now known as Robbins Island, was performed at his cost.
Earl admits he did not consult with the State Land Office prior to his successful bid for the property in October 1951. It was then that Earl contracted to lease the 8.52 acre tract of land in the bed of Lake St. John lying above the 54.6 Mean Gulf Level for a period of five years for $40.00 annual rent, with an option to renew for an additional five years. He alleges he was assured by Lawrence Alwood, a member of the Board of Commissioners of the Fifth Louisiana Levee District, that any improvements on the property would be honored by the Board and rental payments would remain the same. Earl maintains he and his family spent approximately $10,000 developing the land from 1951 until 1956, because of Alwood's guarantees. The improvements made by the Robbins family included raising the land by as much as four to seven feet above normal flood stage and building a 2,440 foot road bed to intersect Robbins' private business property with the island.
The appellees further assert the president of the Levee District, A.T. Shields, warned Earl that Alwood and Norman Rogers were attempting to acquire the lease property. Shields suggested that Earl "go to Baton Rouge" and attempt to purchase the right of way for the road bed he constructed. Earl took Shields' advice and, on September 10, 1956, he was granted the right of way to 64 roads, for $35.00, which connected the southeast end of the island with the road he built. A week later, the State of Louisiana sold Earl the right of way for $148.00 to the 2,440 foot road he constructed.
Several years later, in July 1963, R.L. Bailey, then president of the Board of Commissioners of the Fifth Louisiana Levee District, received a letter from the State Land Office stating the State owned the island property. However, a title opinion rendered in 1951 identified the Levee District as the owner of the property. Despite the uncertainty, the land was again leased to Earl, less one lot for Rogers. This time, the State Land Office informed Earl it possessed jurisdiction over the island. Pursuant to the State Lease Law, that office divided the property into eleven lots and various members of the Robbins family leased ten of the eleven lots for $50.00 per lot per year for three years. The family continued to make improvements during this time, including building a permanent structure in which Earl Robbins and his wife presently reside. They also continued adding soil to the island at certain low spots. Earl Robbins testified he and his family have expended over $300,000 in improvements on the island excluding labor.
The plaintiffs filed suit on November 2, 1995, in Concordia Parish against the Commissioner of Administration in his official capacity; Glen Kent, Public Lands Administrator, Division of Administration, State Land Office, in both his official and individual capacities; the State of Louisiana through the State Land Office (hereinafter referred to as the "State"); and the Fifth Louisiana Levee District. Plaintiffs prayed:
(1) The State be directed to exchange certain properties as described in Act 899 of 1995;
(2) That the District Court determine that the property the state was receiving from the plaintiffs under Act 899 of 1995 was of greater economic value than that which the State was transferring to the plaintiffs under Act 899 of 1995; and

*964 (3) That if plaintiffs were not allowed to receive fee title in the property described in Act 899 of 1995 that they be compensated for the time and money they had spent on the State's property since 1951.
The State and the Fifth District Levee Board filed peremptory exceptions of no right of action and no cause of action. The exceptions were denied or remedied by amendments to plaintiffs' petition. The State also filed declinatory exceptions of lack of subject matter jurisdiction and improper venue. The court took the exceptions "under advisement" and has not yet rendered a judgment on them to date. By letter dated February 14, 1997, Earl Robbins was informed the leases on Lots 2, 3, 4, 5, 6, 7, 8, 10, & 11 had terminated and was given notice under the provisions of La.R.S. 41:1217(A)(3) to remove any improvements on the lots within ninety days. Although the State had not yet formally filed an eviction petition, Earl and his family filed a petition for injunction seeking to judicially restrain the State from evicting them.
After hearing and admission of plaintiffs' irreparable injury evidence, the district court enjoined the State from evicting them from all lots described in the State's February 14, 1997 letter, and Lot 9, which was not included in the letter. As mentioned, the court did not formally rule on the State's venue exception and in its oral reasons for judgment stated:
We will [proceed] with a specific reservation to the State of Louisiana that the fact that he is here and participating in this particular argument about exceptions, he will not lose any claim he has as to venue, or waive any rights he has relative to appeals of any the mistakes (sic) he alleges this court makes as to decisions about venue as to the petition ...
The defendant-appellants now ask us to review the courts rulings for manifest error.

ASSIGNMENTS 1 & 2
In their first two assignments, appellants argue the district court erred in not finding Concordia Parish was an improper venue for the plaintiffs' suit against the State defendants. They further contend the court should not have enjoined the State without first deciding the venue issue. The Robbins family avers these assignments are "premature" because "appeals are taken from judgments and not from findings of various issues in the course of the trial court's determination of judgment." However, we have long held that:
[T]he appellate court, in discharging its duty to render a judgment which is just, legal and proper upon the record, has authority to consider any legal fact or theory presented in the case when the record contains all the evidence necessary to determine the question, even though no ruling was made on that issue by the trial court.
Devillier v. City of Opelousas, 247 So.2d 412, 418 (La.App. 3 Cir.1971) citing La.Code Civ.P. art 2164. Finding the record lodged with the court is sufficiently complete, we elect first to consider whether Concordia Parish was a permissible venue for plaintiffs' action.
The State cites Abshire v. State, Through Dep't of Ins., 636 So.2d 627 (La.App. 3 Cir. 1994) in support of its assertion "venue is proper only in Baton Rouge when the ministerial actions of State defendants are called into question." Abshire involved a suit filed by more than one thousand insurance policyholders, annuity holders, and shareholders against the State, through the Department of Insurance and the Office of Financial Institutions, as a result of the collapse of three insurance and investment companies. The Abshire plaintiffs filed suit in the 9th Judicial District Court believing Rapides Parish, as the domicile of the insurers and place where many of the aggrieved plaintiffs are domiciled, was an appropriate venue. Because the plaintiffs' allegations of "mismanagement, gross negligence, incompetence, and fraud [were] leveled against senior state officials domiciled in Baton Rouge," the State argued that under the relevant venue statute, La. R.S. 13:5104, Baton Rouge was the proper venue. Id. at 628. In the case before us, the State submits "the plaintiffs are really contending that the appraisal and analysis performed by the senior state officials is *965 defective." Thus, the argument goes, "this again is nothing more than a cause of action calling into question the administrative actions... of those officials, which again occurred in Baton Rouge, not in Concordia Parish." The appellant further argues the Robbins' prayer for compensation for the "time and money" they expended on improving Robbins Island is disallowed by La.R.S. 41:1217, as interpreted by those State officials who make policy decisions concerning state lands. Accordingly, the State claims, Baton Rouge is the only proper venue for the Robbins' lawsuit.
In Abshire, we began our discussion by noting the general venue articles contained in our Code of Civil Procedure are inapplicable to "suits which call into question the administrative actions of public entities." Id. at 629. La.R.S. 13:5104, "the sole statutory authority of the various state entities pertaining to the proper venue as it concerns the suits against the state" reads:
A. All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises.

B. All suits filed against a political subdivision of the state or against an officer or employee of a political subdivision for conduct arising out of the discharge of his official duties or within the course and scope of his employment shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause arises.
(Emphasis added).
While recognizing various circuits have interpreted La.R.S. 13:5104 differently, we held "the facts of [Abshire] effectively rules out venue anywhere besides the Parish of East Baton Rouge". Abshire, 636 So.2d at 629. Our decision in Abshire was the correct one, considering the vast number of plaintiffs and the statewide significance of the State officials' alleged misfeasance. We felt then, as we do now, "the language contained in L.S.A.-R.S. 13:5104(A) would render exceptionally rare the circumstances under which a state entity who opposes litigation away from home might be required to litigate issues of great import statewide, as opposed to causes of action whose immediate consequences merely reverberate locally." Id. at 628-29. (Emphasis provided). The Abshire plaintiffs based their cause of action on assertions "that senior officials in state government failed to regulate the insurance and financial industries on a statewide basis." Id. Here, however, the Robbins' grievances are inconsequential everywhere except Concordia Parish. No "undue encumbrances upon the state's governing apparatus" will ensue if the plaintiffs continue their suit in Rapides Parish. La.Code Civ.P. art. 80 provides, "[a]n action to assert an interest in immovable property, or a right in, to, or against immovable property," may be brought in the parish where the property is located, as may "[a]n action arising from the breach of a lease ... including the enforcing of a lessor's privilege." Concordia Parish is an appropriate venue here, because the State's alleged wrongdoing, as stated by the plaintiffs, has repercussions which "merely reverberate locally." Abshire at 630. See also V.C. Nora, Jr. Bldg. & Remodeling v. State, 93-1469 (La.App. 3 Cir. 3/30/94), 635 So.2d 466.
Because we find the Robbins' suit was filed in a proper venue, any error the trial court may have committed in not addressing this issue was harmless.

ASSIGNMENTS 3-4
Next, the appellants submit the court erred in enjoining the State from evicting the Robbins from the formerly leased premises before it filed of an eviction petition. They also suggest plaintiffs failed to prove irreparable injury sufficient to support the preliminary injunction.
We have not found any support for the State's third assignment. Virtually no argument on the matter is provided in its brief. On the other hand, we do know that "a preliminary injunction is designed to preserve the existing status pending trial of *966 issues on the merits of a case." Louisiana Gaming Corp. v. Jerry's Package Store, 629 So.2d 479 (La.App. 3 Cir.1993); Franz v. Cormier, 579 So.2d 1201 (La.App. 5 Cir. 1991). Furthermore, while an injunction may not be used to correct an already consummated wrong, it may be used to prevent a wrong. See Verdun v. Scallon Bros. Contractors, Inc., 263 La. 1073, 270 So.2d 512 (1972). Further, the trial judge has great discretion to grant or deny injunctive relief, and his determination should not be disturbed absent manifest abuse of discretion. State, Through Louisiana State Bd. of Exam'rs of Psychologists of Dep't of Health and Human Serv. v. Atterbery, 95-0391 (La. App. 1 Cir. 11/9/95), 664 So.2d 1216. We find no such error here.
Moreover, the trial court did not err in finding plaintiffs would sustain irreparable harm without injunctive relief. In so concluding, the court relied, in part, on the following exchange between Earl and his attorney, on direct examination:
Q. Can you give me any estimate, Mr. Robbins, as to how much out-of-pocket money that you have been out since you have first started making improvements on Robbins Island up to today?
A. Yes, sir.
Q. How much would that be?
A. In excess of $300,000.
Q. Okay. Do you have your home in fact built on the island?
A. Yes, I do.
* * * * * *
Q. If you were to comply with [the eviction notice], would that cause you any injury, or anybody else that you aware that's (sic) in this Robbins Enterprise, LLC?
A. I sure could.
Q. Any damages or injury?
A. The damage would be, I have no place to live, my son would have no place to live, my daughter would have no place to live, my granddaughter would have no place to live. And a few close friends would have no place to live.

* * * * * *
"Irreparable harm" generally means "loss that cannot be adequately compensated in money damages or measured by a pecuniary standard." Star Enterprise v. State Through Dep't Of Revenue and Taxation, 95-1980, 95-1981, 95-1982 (La.App. 1 Cir. 6/28/96), 676 So.2d 827, 834, writ denied, 96-1983 (La.3/1497), 689 So.2d 1383. Loss of the "reasonable enjoyment" of one's home often cannot be adequately compensated by the payment of money. See State ex rel. Denis v. King, 1901, 105 La. 731, 30 So. 101. Upon review of the record, we cannot say the trial court erred in finding irreparable harm would ensue in this case. Accordingly, the appellant's fourth assignment lacks merit as well.

DECREE
For the foregoing reasons, the trial court's judgment is affirmed. All costs of this appeal are to be borne by the appellants.
AFFIRMED.