| PAMELA HATHEWAY | * | NO. 2024-CA-0395 |
|---|---|---|
| PERSON, WIFE OF/AND ERIC OLIVER PERSON | | |
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| 2434 ST. CHARLES AVENUE | * | |
| CONDOMINIUM | | STATE OF LOUISIANA |
| HOMEOWNERS | * * * * * * * | |
| ASSOCIATION, INC. | | |
| THROUGH ITS BOARD OF | | |
| DIRECTORS | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-01810, DIVISION "C"
Honorable Sidney H. Cates, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Nakisha Ervin-Knott)

Eric Oliver Person
1539 Jackson Avenue, Suite 100
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLEE

Henry Weber
Parker W. Bradley
GALLOWAY JOHNSON TOMPKINS BURR & SMITH, APLC
701 Poydras Street, 40th Floor
New Orleans, LA 70139

      COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**DECEMBER 26, 2024**

This civil case involves a special assessment levied against Appellees, Pamela and Eric Person (collectively, the "Persons"), payable to Appellant, 2434 St. Charles Avenue Condominium Homeowners Association, Inc. ("the HOA"). The HOA seeks review of the district court's April 12, 2024 judgment, which granted a preliminary injunction in favor of the Persons, enjoining the HOA from enforcing the special assessment, filing a lien against the Persons' condominium unit or taking any action to restrict the access and enjoyment of that unit by the Persons during the pendency of the case. For the following reasons, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The Persons are the record owners of Unit 604, located within the 2434 St. Charles Avenue Condominium in New Orleans, Louisiana (the "Condo"). The Condo is comprised of nineteen separate units, which are governed by the HOA

through its Board of Directors (the "Board") pursuant to a Declaration of Condominium Ownership (the "Declaration").

On August 29, 2021, in a near-direct hit, Hurricane Ida (the "Hurricane") caused severe damage to the Greater New Orleans area. The Condo sustained damages as a result of the storm, including, but not limited to, damages to eleven of its external windows, none of which are associated directly with Unit 604. The record indicates that the HOA filed a claim with its property insurer, who, in a letter dated October 28, 2022, refused payment for any damages associated with the windows, asserting that any such damages pre-dated the Hurricane. Shortly afterwards, on November 28, 2022, the insurer invoked an arbitration clause contained within the policy, which resulted in the scheduling of an arbitration hearing to be held almost two years later, on October 28, 2024.[1]

In the interim, the HOA obtained an estimate that the total cost of repairs to the Condo would be approximately $1.6 million. At a March 20, 2023 meeting, the Board determined that pursuant to the Declaration, to obtain the necessary funds to make these repairs they would first draw down all of the HOA's $500,000.00 reserve funds. The Board then voted to levy a special assessment on each of the Condo unit owners for the excess $1.1 million.[2] The Board informed the unit owners of this vote in a March 29, 2023 letter, and subsequently held a meeting on April 11, 2023, to allow for discussion and to answer any questions posed by the owners.

---

[1] Because the record was lodged and all briefing to this Court was concluded prior to this date, there is no documentary evidence as to the results of the scheduled arbitration proceeding.

[2] The amount of each assessment was based upon the percentage of ownership in the common elements for each owner.

Nearly three months later, on June 30, 2023, the HOA entered into a contract with C-Sharpe Co., LLC, in the amount of $1,101,316.73, to replace the damaged windows and to repair or replace damaged stucco and stucco expansion bands associated with those windows. Rather than pay any portion of the special assessment, the Persons filed a petition for damages, declaratory judgment and injunctive relief on February 28, 2024. In this petition, the Persons alleged that the Hurricane caused damages to the "common elements"[3] of the Condo—which are the responsibility of the HOA—and certain "limited common elements"[4] in several units of the Condo—which damages are the responsibility of the individual unit owner of the affected unit. The Persons further alleged that after the insurer refused to make any further payments on the insurance claim submitted by the Board and after the insurer invoked an arbitration clause in the policy as to any additional damage payments, the Board failed to file suit against the insurer for nearly nine months. Instead, the Board levied a special assessment against the unit owners, and their pro rata share of the special assessment totaled $45,980.00. The Persons contend that the HOA had demanded that they pay the entire assessment by December 31, 2023, while allowing all or most of the other unit owners to remit payment in two installments.

On March 7, 2024, the district court held a hearing on the Persons' petition. After hearing argument of counsel, the district court determined that in light of the

_____

[3] La. R.S. 9:1121.103(5) defines common elements as "the portion of the condominium property not a part of the individual unit."

[4] La. R.S. 9:1121.103(6) defines limited common elements as "those common elements reserved in the condominium declaration for the exclusive use of a certain unit or certain units."

3

impending arbitration proceeding scheduled for October 28, 2024, it would grant the Persons' preliminary request for injunctive relief in order to maintain the status quo of the parties. The court's written judgment and notice of signing were both issued on April 12, 2024. In its judgment, the district court enjoined the HOA from enforcing the special assessment, filing a lien against the Persons' condominium unit or taking any action to restrict the access and enjoyment of that unit by the Persons during the pendency of the case. This timely appeal followed.

## STANDARD OF REVIEW

"This Court's jurisprudence has long held that, generally, '[a]n appellate court reviews a [district] court's decision on the grant or denial of a preliminary injunction under the abuse of discretion standard of review.'" *Minor Children v. Roman Catholic Church of Archdiocese of New Orleans*, 24-0008, p. 4 (La. App. 4 Cir. 8/20/24), ____ So.3d ____, ____, 2024 WL 3873280 at *2 (quoting *Deepwater Prop. Mgmt. LLC v. Citywide Dev. Servs., L.L.C.*, 23-0612, p. 3 (La. App. 4 Cir. 3/15/24), 385 So.3d 727, 730). "However, '[t]hat broad standard is, of course, based upon a conclusion that the [district] court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion.'" *Id.* (quoting *Meredith v. I Am Music, LLC*, 18-0659, p. 4 (La. App. 4 Cir. 2/13/19), 265 So.3d 1143, 1145-46) (internal quotation omitted). "[W]here errors of law are involved, the appropriate standard of review is *de novo*." *Id.* at pp. 4-5, 2024 WL 3873280 at *2 (quoting *Meredith*, at p. 4, 265 So.3d at 1146).

We note that the HOA's preliminary argument is that this Court is compelled to review the instant appeal *de novo*. Its contention is that the Declaration constitutes a contract that is the law between the parties and that the district court made a specific and erroneous factual finding as to the requirements of the HOA's bylaws. We disagree. While we find the HOA's general principle that the Declaration and bylaws have the force of law between the parties to be sound (*see* La. R.S. 1124.115(A)), we find its application here to be misplaced. Our review of the district court's April 12, 2024 judgment reveals that there was no ruling that interpreted either the Declaration or the bylaws; it simply granted the preliminary injunction in favor of the Persons.

It is true that at the March 7, 2024 hearing, the district court commented:

> I'm inclined to grant the preliminary injunction because I'm not sure that I'm convinced that the Association followed, to the letter, the steps and [bylaws,] as they required them to do certain things before they took the steps that they did.

However, as this Court has often repeated, "a 'district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *Robert J. Caluda, APLC v. City of New Orleans*, 20-0660, p. 4 (La. App. 4 Cir. 4/28/21), 318 So.3d 1008, 1011 (quoting *Bellard v. Am. Cent. Ins. Co.*, 07-1335, p. 25 (La. 4/18/08), 980 So. 2d 654, 671).

Moreover, the district court's very next statement explained that:

> And so there can be irreparable harm, I think, because I'm not convinced that, given the current state of affairs, that the status quo's going to be maintained absent my granting the request for relief. So I'm going to grant the preliminary injunction pending trial on the merits so that we can maintain the status quo.

And in conclusion, the presiding judge aspirationally offered:

> I'm hopeful and optimistic, as I'm sure you all are, that the resolution of what's set in October may resolve this for everybody's benefit.

For these reasons, we find that the district court did not commit an error of law in interpreting the Declaration or the bylaws. Thus, we are limited to determining whether the granting of the preliminary injunction in favor of the Persons was an abuse of the court's discretion.

## DISCUSSION

The HOA asserts two assignments of error for our consideration: (1) the district court erred in enjoining the HOA from enforcement of the special assessment; and (2) the district court erred in enjoining the HOA from filing a lien against the Persons' unit in connection to the special assessment. Before addressing the merits of this appeal, we will first outline the applicable law.

*Preliminary Injunction*

"A preliminary injunction is an interlocutory procedural device designed to preserve the existing status quo between the parties, pending trial on the main demand." *Minor Children*, 24-0008, p. 5, 2024 WL 3873280 at *3 (quoting *Randazzo v. Imbraguglio*, 21-0679, p. 12 (La. App. 4 Cir. 5/25/22), 343 So.3d 852, 861). "Preliminary injunctions can be prohibitory or mandatory." *Id*. (quoting *Randazzo*, 21-0679, p. 12, 343 So.3d at 861). "A mandatory injunction orders the doing of something, while a prohibitory injunction seeks to restrain conduct." *Id*. (quoting *Deepwater*, 23-0612, p. 4, 385 So.3d at 731). "If the mover seeks a prohibitory preliminary injunction, the mover must make a *prima facie* showing; yet if the mover seeks a mandatory preliminary injunction, the mover must demonstrate the elements by a preponderance of the evidence at an evidentiary hearing." *Id.* at

6

pp. 5-6, 2024 WL 3873280 at *3 (quoting *Randazzo*, 21-0679, p. 13, 343 So.3d at 862).

In this instance, the Persons seek to restrain the HOA's conduct by prohibiting it from enforcing the special assessment, filing a lien against their unit, or restricting access or enjoyment of the unit. Accordingly, because the prayed-for injunction does not seek to impose any affirmative duty to act on the part of the HOA, we conclude that this is a prohibitory injunction. As such, a long line of jurisprudence instructs that the Persons—as the moving party—must make a *prima facie* showing that: (1) they will suffer irreparable injury, loss, or damage if the motion is not granted; (2) they are entitled to the relief sought; and (3) they will likely prevail on the merits of the case. *See id.* at p. 6, 2024 WL 3873280 at *3 (quoting *Randazzo*, 21-0679, pp. 12-13, 343 So.3d at 861); *see also Mercadel v. New Orleans Jazz & Heritage Festival & Found., Inc.*, 22-0242, p. 11 (La. App. 4 Cir. 4/20/22), 338 So.3d 589, 597.

*Enforcement of the Special Assessment*

In this assignment of error, the HOA first argues that the damaged windows at issue are properly categorized as "common elements" pursuant to the Declaration, the HOA's By-Laws and the Louisiana Condominium Act (the "Act," codified in La. R.S. 9:1121.101 *et seq.*); therefore, the special assessment levied against the Persons was proper pursuant to its powers arising under the Declaration. Next, the HOA asserts that it followed all of the procedural directives delineated in the Declaration for levying the special assessment. In opposition, the Persons argue that the damaged windows are actually "limited common elements" as defined by the Declaration, which prohibits the HOA from imposing a special assessment against unit owners who do not enjoy the use of those windows. Additionally, the Persons

7

maintain that the HOA did not comply with the requirements of the Declaration that only allow a special assessment to be charged against the owners affected by the limited common areas after a vote of those owners. The Persons insist that no such vote took place.

After review of the record, we find that the special assessment levied against the Persons was premature, and pretermit discussion on whether the windows in question are a part of the common elements or limited common elements.

La. R.S. 9:1123.112(G) provides in pertinent part:

> Any portion of the condominium damaged or destroyed shall be repaired or replaced promptly by the association unless (1) the condominium is terminated, (2) repair or replacement would be illegal under any state or local health or safety statute or ordinance, or (3) eighty percent, or such other percentage provided in the declaration, of the unit owners vote not to rebuild. The cost of repair or replacement in excess of insurance proceeds and reserves is a common expense.

Article 14 of the Declaration, which mirrors the statute, provides in pertinent part:

> ### 14. Reconstruction or Repair of Casualty Damage
>
> A. Any portion of the Condominium damaged or destroyed shall be repaired or replaced promptly by the Association unless:
> (a) this Declaration is terminated;
> (b) repair or replacement would be illegal under any state or local health or safety statute or ordinance, or
> (c) 80% of the Unit Owners vote not to rebuild.
>
> B. The cost of repair and replacement in excess of insurance proceeds is a common expense.

Even assuming the HOA is correct in its interpretation relating to the windows—that they are common elements—Article 14(B) of the Declaration limits the amount of the special assessment to those costs of repair that are in excess of any insurance proceeds. Of note, the parties conceded at argument before this Court, an arbitration proceeding was set to commence on October 24, 2024. There is no record evidence before us to confirm whether the arbitration commenced or concluded, and

8

counsel for the parties were both unaware if any decision had been rendered. We find that a special assessment that is directly tied to the amount of additional insurance proceeds the HOA will receive, if any, is premature until the amount of those proceeds is determined. Furthermore, as the appellate court explained in *Pappas v. Hand Surgical Assocs., Ltd.*, "[t]he principal demand is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or tentatively decide merit issues." 22-407, pp. 5-6 (La. App. 5 Cir. 3/29/23), 364 So.3d 495, 501 (citation omitted). This argument is unpersuasive.

*Irreparable Harm*

Here, the HOA argues that the Persons will not be able to demonstrate that the filing of a lien against their unit will cause irreparable harm. Citing to this Court's decision in *Easterling v. Estate of Miller*, the HOA offers that "[i]rreparable injury is an injury or loss that cannot be adequately compensated in money damages, or is not susceptible to measurement by pecuniary standards." 14-1354, p. 11 (La. App. 4 Cir. 12/23/15), 184 So.3d 222, 229 (citation omitted). Even if the lien is improperly filed, the HOA argues, the Persons have a monetary remedy that could adequately compensate them found in La. R.S. 1123.115(A)(4). This statute provides:

> If the condominium association files a lien pursuant to this Section and the lien is for an amount of the assessment or dues secured by the privilege allowed pursuant hereto that is not owed, in whole or in part, and any owner or interest holder of the condominium unit affected by the privilege files suit to obtain a complete or partial release of such lien or privilege, then in such event the condominium association filing the lien shall be liable to the owner or interest holder in the condominium for the expenses of obtaining the release, in whole or in part, including reasonable attorney fees and all costs associated therewith.

9

The Persons counter that: (1) even though the HOA has averred that it will not prevent access to the unit, in the absence of an injunction there is no guarantee that it might change its stance; (2) the imposition of a lien could trigger foreclosure by the mortgage lender in order to protect the lender's interest; and (3) the imposition of a lien would allow the HOA, pursuant to the Declaration, to foreclose on the lien and take title to the unit. We find the Persons' arguments to be persuasive.

First, as to whether the Persons could be adequately monetarily compensated—in light of the pending arbitration and the anticipation of the receipt of additional insurance proceeds—we find that it would be judicially inefficient to allow the HOA to file a lien when any lien filed without factoring in those proceeds would be erroneous on its face. Because no lien has yet been filed, it would seem more appropriate to first obtain an accurate calculation of the amount of monies owed for the special assessment, if any at all.

Next, we turn to the Persons' third assertion—that the HOA could foreclose on and take title to their unit. Our review of the record reveals that in the most current version of the Declaration,[5] the HOA does indeed have the power to take possession of the unit and sell it. Specifically, Paragraph 21 provides, in relevant part, that:

> In the event of any default by any Unit Owner under the provisions of the Act, Declaration, By-Laws or rules and regulations of the board, the Board or its agents shall have each and all of the rights and remedies which may be provided for in the Act, Declaration, By-Laws or said rules and regulations or which may be available at law or in equity, and may prosecute any action or other proceedings against such defaulting

---

[5] Executed on May 5, 2017, and duly recorded with the Orleans Parish Clerk of Court under CIN# 617338 on May 9, 2017.

Unit Owner and/or others for enforcement of any lien and the appointment of a receiver for the Unit and ownership interest of such Unit Owner, or for damages or injunction or specific performance or for judgment for payment of money and collection thereof, or the right to take possession of the Unit and to sell the same as hereinafter in this paragraph provided, or for any combination of remedies, or for any other relief. In addition to the other remedies set forth therein, the voting rights and the right to attend and address any meeting of the association and/or the Board, of any Unit Owner who is deemed to be in default by the Board shall be suspended during the pendency of any default condition.

* * *

If any Unit Owner (either by his own conduct or by the conduct of any other occupant of his Unit) shall violate any of the covenants or restrictions or provisions of this Declaration or the regulations adopted by the Board, and such violation shall not be cured within thirty (30) days after notice in writing from the Board, then the Board shall have the power to issue to said defaulting Owner a ten (10) day notice in writing to terminate the rights of the said defaulting Owner to continue as a Unit Owner and to continue to occupy, use or control his Unit, and thereupon an action may be filed by the Board against said defaulting Owner for a decree of mandatory injunction against said defaulting Owner or occupant or (subject to the prior consent in writing of any mortgagee having a security interest in the Unit Ownership of said defaulting owner, which consent shall not be unreasonably withheld), in the alternative, for a judgement declaring the termination of said defaulting Owner's right to occupy, use or control the Unit owned by him on account of said violation, and ordering that all the right, title and interest of said defaulting Owner in the Property shall be sold (subject to the lien of any existing mortgage) at a judicial sale upon such notice and terms as the court shall determine. The proceeds of any such judicial sale shall first be paid to discharge court costs, reasonable attorney's fees and all other expenses of the proceeding and sale, and all such items shall be taxed against said defaulting Unit Owner in said decree. Any balance of proceeds, after satisfaction of such charges and any unpaid assessments hereunder or any liens, shall be paid to said defaulting Owner. Upon the confirmation of such sale, the purchaser shall thereupon be entitled to a deed to the Unit and the Unit Owner's corresponding percentage of ownership in the Common Elements, and to immediate possession of the Unit sold and may apply to the court for a writ of assistance for the purpose of acquiring such possession, and it shall be a condition of any such sale, that the purchaser shall take the interest in the Unit Ownership sold subject to this Declaration.

The HOA argued to the district court that they lacked authority under Louisiana law to evict or limit access to the Persons' unit based upon its reading of *Regency Park Townhome Condo. Ass'n., Inc. v. Roche*, 98-0045, 98-0081 (La. App. 4 Cir.

11

6/17/98), 715 So.2d 600. However, as the Persons' pointed out, the court in *Regency Park* was faced with a statutory interpretation of the Act as set forth in La. R.S. 9:1124.115(C).[6] This Court has long recognized that, pursuant to La. R.S. 9:1124.115(A),[7] "the condominium declaration and by-laws have the force and effect of law between the individual unit owners." *FMC Enter., L.L.C. v. Prytania-St. Mary Condos. Ass'n., Inc.*, 12-1634, p. 11 (La. App. 4 Cir. 5/15/13), 117 So.3d 217, 225 (quoting *Person v. 2434 St. Charles Ave. Condo. Ass'n.*, 11-1097, p. 3 (La. App. 4 Cir. 3/7/12), 88 So.3d 679, 681).

Therefore, considering that Paragraph 21 of the Declaration provides an avenue for the HOA to dispossess the Persons of their home and ultimately put it up for sale unless the special assessment is paid, we find that this eventuality constitutes an irreparable harm. As the appellate court noted in *Robbins v. State Through State Land Off.*, "[l]oss of the 'reasonable enjoyment' of one's home often cannot be adequately compensated by the payment of money." 97-671, p. 9 (La. App. 3 Cir. 12/17/97), 704 So.2d 961, 966 (citing *State ex rel. Denis v. King*, 105 La. 731, 30 So. 101 (La. 1901)). Further, we agree with the federal court that explained, "money damages would not be an adequate remedy for lost property rights '[b]ecause real property and its attributes are considered unique and loss of real property rights generally results in irreparable harm. . . .'" *U.L. Coleman Co., Ltd. v. Bossier City-Par. Metro. Planning Com'n.*, unpub., 08-2011 (W.D. La. 02/26/09), 2009 WL

---

[6] Louisiana Revised Statutes 9:1124.115(C) provides that "[f]or the purposes of this Section, a unit owner shall be considered an occupant of the condominium property and subject to the provisions of Code of Civil Procedure Articles 4701 through 4735 in an action by the association of unit owners."

[7] Louisiana Revised Statutes 9:1124.115(A) directs that "[t]he condominium declaration and bylaws shall have the force of law between the individual unit owners. The remedies for breach of any obligation imposed on unit owners or the declarant shall be damages, injunctions, or other such remedies as provided by law."

497634 at *13 (quoting *Dixon v. Thatcher*, 103 Nev. 414, 416, 742 P.2d 1029, 1030 (Nev. 1987)).

Hence, we find the Persons have made a *prima facie* showing that they would suffer irreparable harm. This satisfies the first requirement for granting a preliminary injunction as we expounded in *Minor Children*, supra. Thus, using jurisprudence as an instructive guide, we further find that the Persons are entitled to injunctive relief. Additionally, in satisfaction of the third necessary condition, we conclude that in the present posture of this case—i.e., the pending arbitration award—we find the Persons would prevail at a trial on the merits because the special assessment and the imposition of a lien are premature.

Finally, the HOA has assured this Court that it has no intention of attempting to limit the Persons' access to their unit. Notwithstanding that assurance, we find that given the state of affairs between the parties, the district court did not abuse its discretion in granting a preliminary injunction to maintain the status quo—either until the results of the arbitration hearing are known, or the matter proceeds to a trial on the merits.[8]

## CONCLUSION

For all the foregoing reasons, we affirm the district court's April 12, 2024 judgment.

**AFFIRMED**

---

[8] Having found that the Persons have satisfied the elements necessary for the grant of a preliminary injunction through their third argument, we pretermit any discussion of their second argument—i.e., whether the filing of a lien against the unit could trigger foreclosure proceedings by the mortgage lender.